CHARLES A. URY, Appellant, v. THE MODERN WOODMEN OF AMERICA, Appellee.

**Mutual insurance:** DEATH FROM INTOXICATION: EVIDENCE. In this
1 action upon a mutual benefit certificate the evidence is held sufficient to show that the intemperate use of intoxications, in violation of a provision of the certificate, was the direct cause of the insured's death.

**Same:** BY-LAWS: AMENDMENT. Where by the terms of the original
2 contract of insurance power to amend the by-laws of the association was expressly reserved, a reasonable amendment to a by-

law exempting the society from liability in case of death from intoxication, which did not materially alter the meaning and effect of the original section, is held not to affect the validity of the certificate, although enacted after deceased became a member.

**Same:** INTEMPERATE USE OF INTOXICANTS. The term "intemperate use" of intoxicants, as used in the by-law of the association exempting it from liability in case of death as the result of intoxication, when interpreted with regard to the connection in which it is employed, is held to include death as the direct or indirect result of a single act of intoxication, and irrespective of whether the member had acquired a fixed habit of intemperance.

*Appeal from Cass District Court.*—HON. W. R. GREEN, Judge.

TUESDAY, SEPTEMBER 27, 1910.

ACTION in equity to require an assessment upon the membership of the defendant association to pay the amount of an insurance benefit certificate issued by said association to one George W. Ury, now deceased. The court found for the defendant, dismissed the bill, and plaintiff appeals. —*Affirmed.*

*Willard & Willard* and *L. J. Neff,* for appellant.

*Truman Plantz* and *Saunders & Stuart,* for appellee.

PER CURIAM.—The defendant is an assessment insurance society of which George W. Ury was at the date of his death a member in good standing. The one central proposition in the case is whether the death of said member occurred under such circumstances or was so caused or occasioned as to relieve the society from legal liability upon his membership certificate. Without attempting to set out all the language of the certificate of membership, application, and by-laws constituting the contract between the parties, we may say that among its provisions was one

which relieved the insurer from liability if the insured be or become intemperate in the use of intoxicating liquors or if his death should result directly or indirectly from his intemperate use of such liquors. The defense is based upon the claim that the member at the time of his admission to the society falsely warranted that he was not addicted to the use of intoxicants, and that he did, in fact, habitually indulge in such liquors to intemperate excess, and that the injury from which he died was the direct result of his intoxication at the time. The trial court found for the defendant generally.

If the case for the defendant rested solely upon the alleged false warranty or upon subsequent confirmed habit of intoxication by the deceased, we should be inclined to hold that the defense was not made out.

1. MUTUAL INSURANCE: death from intoxication: evidence.

We are of the opinion, however, that the fact that deceased was badly intoxicated at the time of his injury, and that his death was the direct result and consequence of that condition produced by the intemperate use of intoxicants is so far and so well established by the evidence that we are not justified in disturbing the finding of the trial court which had the advantage of seeing and hearing the witnesses who testified on the trial. It appears without dispute that deceased entered the restaurant of one Fleming, and was waited upon at the lunch counter. In settling his bill some controversy arose about an alleged unpaid account, resulting in the deceased being ejected from the building. He then turned as if to re-enter, and, falling upon the cement walk, received the injury from which he shortly died. It is the theory of the plaintiff that the fall was a mere accident, or was the result of a blow or push by Fleming, while the defendant's claim is that the fall of deceased was attributable solely to his excessive intoxication, and without the use of any force or violence by Fleming or any other person. The defendant's version of the affair is sustained by all

the witnesses who were immediately present and testify
upon that subject. One or two witnesses who saw some
part of the transaction from a considerable distance say
that Fleming appeared to strike the deceased, and, while
the issue thus raised would have made a fair jury question
were the case one at law, we are disposed to hold that,
assuming the credibility of all the witnesses (and we see
no reason for discrediting any of them), the preponder-
ance of the testimony upon this point is with the defendant.
To hold otherwise is in effect to express our belief that
several apparently credibile witnesses have committed per-
jury.

It is urged by appellant that the by-law of the society
which exempts it from liability for the death of a member
resulting from the use of intoxicating liquors was enacted
2. SAME: by-laws:  after deceased became a member, and was
  amendment.  therefore not binding upon him or upon the
beneficiary named in his certificate of membership. It is
true there was some change by amendment in the phrase-
ology of this particular section, but, without going into
any discussion of the interesting general question as to
the extent to which such organizations may by amendments
to their by-laws affect their contracts with existing mem-
bers, we may say that the change made in this particular
instance does not materially alter the meaning and effect
of the original section as applied to this case. In any
event, in view of the power of amendment expressly reserved
in the original contract, it must be said that the change
so introduced is not an unreasonable one.

Counsel further argue that the term "intemperate
use" is the equivalent of habitual intemperance in such
use, and we have no doubt that under the well-established
3. SAME:  rule of the cases such is the ordinary and
  intemperate  usual construction to be given to the phrase.
  use of
  intoxicants.  *Insurance Co. v. Foley*, 105 U. S. 355 (26
L. Ed. 1055); *Supreme Lodge v. Foster*, 26 Ind. App.

333 (59 N. E. 877); *Chambers v. Insurance Co.*, 64 Minn. 495 (67 N. W. 367, 58 Am. St. Rep. 549); *Grand Lodge v. Belcham*, 145 Ill. 308 (33 N. E. 886). But the word "use," like all other words of our language, is to be interpreted with some reasonable regard to the connection in which it is employed. The by-law in this instance provides, first, for the forfeiture of the insurance if the member becomes "intemperate in the use of intoxicating liquors," and this we are quite clear refers to habitual use or at least something more than occasional or isolated instances of overindulgence. Then, having thus provided for releases from liability where the member becomes intemperate in habit, it proceeds to further provide for such release where death is the direct or indirect result of the intemperate use of intoxicants. As thus employed and in such connection, the provision is in our opinion the equivalent of an enactment that no liability shall exist where death is the direct or indirect result of the member's intoxication produced by excessive or intemperate indulgence in intoxicating liquors. The word "use" is often employed without reference to fixed habit. If in speaking of a suicide we say of the manner of the death of the deceased that he "used a revolver" or "used strychnine," no one would understand the expression as referring to his habits, but to the means employed by him in causing his death; and so when we see a man in a staggering or helpless state and say of him "he is drunk" or has been "using liquor intemperately," we do not necessarily refer to his habits, but to the fact that his present condition is the result of recent excessive indulgence in strong drink, and, although it may be his first and only lapse of that nature, it is nevertheless the result of an intemperate use of intoxicating liquors within the usual and ordinary signification of that language, and, if being so intoxicated he is thereby caused to fall and receive fatal injury, his death is caused directly or indirectly by such use. That this was the meaning in-

tended in the present instance is quite clearly indicated by the fact that the by-law referred to had already made provision as to the effect which habitual intemperance should have upon the member's contract without regard to the inquiry whether death was the result of such habit.

It follows from what we have said that the record before us does not justify interference with the decree entered by the district court, and it is therefore *affirmed.*