J. E. McJIMSEY, Appellant, v. CITY OF DES MOINES et al., Appellees.

No. 45709.

FEBRUARY 10, 1942.

E. S. Thayer, for appellant.

F. T. Van Liew and Sam Orebaugh, for appellees.

HALE, J.—There is no dispute as to the facts in this case. It involves the right of the plaintiff to alter and change a building occupied by him as a public garage within the limits of a residential area as defined by the zoning ordinance of the City of Des Moines. The property owned by plaintiff is 130 feet north and south by 50 feet east and west and is located at No. 1326 East Oak Park avenue. The north line of the premises abuts on an alley, 14 feet wide, which separates it from the commercial district along both sides of Euclid avenue. At the south end of the tract is the residence of plaintiff, and at the north end is a concrete platform, 48 feet north and south by 40 feet east and west, the north 24 feet of which are enclosed and covered by a frame building, but the south 24 feet are open. This part of the lot was originally a private garage, which plaintiff changed to a public garage for the repair of automobiles. Plaintiff repaired small cars inside the building and trucks were serviced on the open part of the platform.

Zoning ordinance No. 3619 of the City of Des Moines was passed by the city council on January 22, 1926, but notice of the time and place of public hearing relative to the regulations, restrictions, and boundaries proposed to be established by the city ordinance, as required by section 6455, Code of 1924 (and later Codes), was not given, and it was without force and effect until the 15th of April 1939, when a legalizing act (chapter 270, Acts of the Forty-eighth General Assembly) went into effect by publication. This validating act is as follows:

"Section 1. That the proceedings and acts of the zoning commission of the city of Des Moines and the city council of said city and the notices given of said hearings and the publicity appearing in papers of general circulation in said city are

hereby legalized and validated and said notices and publicity are hereby approved and confirmed as adequate and sufficient notice of all hearings required by section sixty-four hundred fifty-five (6455), Code of Iowa, 1935, and said ordinance is hereby legalized, validated and confirmed and all regulations, restrictions and boundaries therein contained are hereby declared effective and valid in all respects.

"Sec. 2. The provisions of this act shall not affect or apply to any use to which any real estate was lawfully devoted prior to the effective date hereof and such use may be continued hereafter."

On October 20, 1939, plaintiff filed with the building commissioner, Fred H. Heyer, an application, with plans and specifications attached, for a building permit to alter and remodel his present building so as to make it cover the entire concrete platform, but he made no provision for yard area as required by section 10 of ordinance No. 3619, applicable to new buildings. The remodeled part of the building, according to the plans and specifications, would be the same size as the concrete platform, plus the thickness of 8-inch concrete block walls. Plaintiff's application was denied by the building commissioner from whose decision plaintiff appealed to the board of adjustment of the City of Des Moines, which, on January 8, 1940, denied plaintiff's application. Plaintiff thereupon filed in the municipal court of Des Moines a petition for writ of certiorari, alleging that he was aggrieved by the decisions of the building commissioner and the board of adjustment, and praying that said decisions be reversed. Writ of certiorari issued, and defendants made return thereto, in which it was claimed that it was shown by the plans and specifications that the plaintiff contemplated the replacement of a frame building by a concrete and masonry building more extensive in area and without providing the yard requirements above mentioned. Plaintiff contended that the restrictive provisions of ordinance No. 3619 as to new structures, required yard areas, and the enlargement of nonconforming buildings, are in conflict with the provisions of section 2 of the validating act. The municipal court by decree sustained defendants in their theory that pre-existing

or nonconforming uses were permitted to continue under the provisions of the validating act, but that in the construction or reconstruction of a building the plaintiff would be required to comply with the provisions of ordinance No. 3619 relative to yard area and the height and area of buildings, regardless of the use to which they were devoted. From this decree of the municipal court sustaining the building commissioner and the board of adjustment in their refusal to grant the permit for the change in the premises, plaintiff appeals to this court.

Some of the provisions of the Code, and of the ordinance referred to in the stipulation of facts in the municipal court, the substance of which is given in the foregoing statement of facts, are as follows:

Section 6452 of the Codes of 1935, 1939, provides: ''For the purpose of promoting the health, safety, morals, or the general welfare of the community, any city or town, including cities acting under the commission plan of government, is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes.'' Section 6453 provides for the establishment of districts to carry out the purposes mentioned in section 6452, and is as follows: ''For any or all of said purposes the local legislative body, hereinafter referred to as the council, may divide the city or town into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this chapter; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. All such regulations and restrictions shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts.''

Ordinance No. 3619 of the City of Des Moines, validated by chapter 270 of the Acts of the Forty-eighth General Assem-

bly, provided, in section 2: "In order to regulate and restrict the location of buildings, structures and land for trade, industry, commerce, residence and other purposes, the City of Des Moines, Iowa, is hereby divided into 'Use Districts,' of which there shall be five, known as: Residence District, Multiple Dwelling District, Commercial District, Light Industrial District, Heavy Industrial District. The City of Des Moines is hereby divided into five (5) districts, as aforesaid, the boundaries of which districts are shown upon the map attached hereto and made a part of this ordinance and designated as the 'Use District Map' and consisting of two sections, Section One (1), of said map, showing that part of the City lying north of the south line of Township Seventy-nine (79), North, within the city limits of the City of Des Moines, and Section Two (2) of said map, showing that part of the City lying south of the south line of Township Seventy-nine (79), north, within the City Limits of the City of Des Moines, and said map and all the notations, references and other information shown thereon shall be as much a part of this ordinance as if the matters and information set forth by said map were all fully described herein." Section 9 of the same ordinance establishes height and area districts, designating such districts "A" to "H" inclusive, and fixes the boundaries thereof. The last two paragraphs of this section are as follows:

"Except as hereinafter provided no building shall be erected, reconstructed or structurally altered except in conformity with the regulations herein established for the height and area district in which such building is located.

"No yard, or other open space provided about any building for the purpose of complying with the provisions of these regulations shall be considered as providing a yard or open space for any other building, nor shall the lot area per family be reduced in any manner, excepting in conformity with the area regulations hereby established for the district in which such building is located."

The provision of the ordinance as to nonconforming uses is found in section 8, and is as follows: "The lawful use of land existing at the time of the passage of this ordinance, although

such use does not conform to the provisions hereof, may be continued, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance. The lawful use of a building existing at the time of the passage of this ordinance, may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building, provided no structural alterations, except those required by law or ordinance, are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or more restricted classification. Whenever a use district shall be hereafter changed, any then existing nonconforming use in such changed district may be continued or changed to another nonconforming use of the same or more restricted classification, provided all other regulations governing the new use are complied with.''

The use of the plaintiff's property was, of course, a nonconforming use, and under the provisions of the above section 8, such use could be continued if no structural alterations were made. Section 10 of the ordinance fixed the height of the buildings, dimensions of the yards, setback, and lot area, in the zone known as ''A'' in ''Height and Area District Regulations.'' It is stipulated that plaintiff's property is in a residential use district and in a height and area district established as district ''A''.

The first assignment of error is the objection to the court's finding that the plaintiff's right to continue the present use of his real estate is subject to all the regulations and restrictions of the zoning ordinance, except those dealing directly with uses of real estate, and that the provisions of the ordinance to which said use is subject include those relating to the construction and alteration of buildings and the area of yards. Plaintiff's complaint is that the lower court disregarded the proposition that, under the language of section 2 of the legalizing act, the Des Moines ordinance is not legalized against any use to which any real estate was lawfully devoted prior to the 15th day of April, 1939, and therefore no section or provision of the zoning ordinance can be enforced to regulate, control, or in any manner affect such a use. Plaintiff's contention is that the

conduct and operation of his motor-car repair business, and sale of parts on his premises, is such a use of real estate as is described in the language of the above section 2. As to that contention we do not understand that defendants disagree.

Plaintiff next contends that under the language of section 2 of the legalizing act, he not only has a legal right to continue the use to which he devotes his real estate, but in addition, he has the right to add to its safety and convenience by remodeling his building according to the plans and specifications on file with the building commissioner, *unhampered by the enforcement of any section or provision of the Des Moines zoning ordinance.* (Italics ours.) In other words, being free to continue the use of the building under the terms of the legalizing act as pertaining to use, he is thereby freed from any enforcement of any other section or provision of the zoning ordinance. This is a large claim, and to our minds, carries to an unwarranted extent the meaning of the exception found in section 2 of the validating act. The first section of such act says that such ordinance "is hereby legalized, validated and confirmed and all regulations, restrictions and boundaries therein contained are hereby declared effective and valid in all respects." Section 2 we have already quoted. Plaintiff argues that the exception in a statute to the application of its primary provisions excepts the subject of the exceptions absolutely from the operation of the act, and cites various authorities as to statutory rules of construction. Such rules, however, are of value only as an aid to construction, in case of ambiguity, but ordinarily the statute and exception proviso, or saving clause, are to be considered together in endeavoring to ascertain the legislative intent. Here it seems such intent is clear. We agree with defendants' contention that it leaves such uses subject to other sections of said ordinance, and especially, as in this case, those sections which regulate the construction and alteration of buildings and the area of yards. Plaintiff's contention, however, is that, if these other provisions were not to be exempted, such statement should have been made in section 2; and he insists that such express restrictions are necessary in all cases. However, the language of section 1 validates and confirms all the "regulations, restric-

tions and boundaries therein contained,'' which are declared effective and valid in all respects. We do not believe that the right to use as a nonconforming owner included the right to modify, alter, or change the condition of the property contrary to the provisions of the ordinance. Plaintiff argues that, assuming that the application to the building commissioner failed to comply with rear yard requirements and other provisions of the ordinance, under such circumstances the plaintiff would be doing no more than availing himself of the advantage of the exemption provided in section 2 of the legalizing act, and the building commissioner was not justified in refusing the building permit applied for by the plaintiff.

Throughout their argument counsel devote considerable space to the meaning of the word "use." Plaintiff cites, among other authorities, the definition in 66 C. J., 66, 67, section 1, where are set out many meanings to be given to the word in different situations. As stated in Lammars v. Railroad Co., 162 Iowa 211, 143 N. W. 1097, 52 L. R. A., N. S., 199, the words "use" and "operation" are broad and may be used in many senses. The section of Corpus Juris above noted also states: "Like all other words, 'use' is to be interpreted with some reasonable regard for the connection in which it is employed." Citing Ury v. Modern Woodmen, 149 Iowa 706, 127 N. W. 665.

In answer to the argument of plaintiff defendants state that the word "use" as applied to zoning has a distinct meaning, and is clearly distinguished from the regulation of height, construction, area and yard requirements, and from the land and buildings themselves; that the exception contained in the validating act relates to "uses" only, and does not seek to limit the regulation of height, area, construction and reconstruction of buildings, and yard areas. In zoning the impositions made are applicable to all property, regardless of the use to which it is devoted. The statute excepting nonconforming uses does not include area, height of buildings, yard areas on which nonconforming uses are established. It is claimed that the City of Des Moines is not attempting to disturb the use to which plaintiff's property was devoted on the effective date of the validating act. Defendants urge that the word "use" in zoning is usually

referred to as a noun, and in the sense used in the validating act, is a tangible, fixed, and established employment of property in a definite way within fixed limitations, and that the so-called exception to the validating act relates only to any use to which real estate was lawfully devoted prior to the effective date thereof, and that the exception does not extend to the real estate or the building but to the use only. It is urged that plaintiff seeks to broaden the definition of the word "use" as it is applied to zoning, and thereby escape the limitations specifically provided in section 8 of the zoning ordinance. Defendants cite as supporting their theory various cases, which, without attempting to analyze but merely mention, are as follows: De Vito v. Pearsall, 115 N. J. L. 323, 180 A. 202; Dickinson v. Inhabitants of City of Plainfield, 13 N. J. Misc. 260, 176 A. 716, affirming 116 N. J. L. 336, 184 A. 195; Rehfeld v. City and County of San Francisco, 218 Cal. 83, 21 P. 2d 419; State v. City of New Orleans, 171 La. 1053, 132 So. 786; Commonwealth v. Dillon, 277 Mass. 196, 178 N. E. 521; Conaway v. Atlantic City, 107 N. J. L. 404, 154 A. 6. All of these cases, although the ordinances to which they apply are not all precisely the same, seem to support the argument of the defendants. Defendants also cite Bassett on Zoning, 1936, 1940 Editions, from which we quote only the following, from page 105 of the 1936 Edition: "If owners of such buildings [nonconforming] plan to alter them substantially, they should be forced by the ordinance to consider the possibilities of rebuilding in a conforming manner." And, from page 109: "A nonconforming building cannot be enlarged as a matter of right. If it could be there might be no limit to the enlargement of a nonconforming factory. The new construction might destroy a residence district whereas the continuance of the original building would be comparatively harmless."

We hold with the defendants that the word "use," as applied to zoning, has a distinct meaning and relates to only one of the several phases of zoning regulations, and is distinguished from the regulation of height, construction, etc., and that such regulations are applicable to all buildings and yard areas, regardless of the use to which they are devoted, and the exception contained in the validating act applies only to the use to which

the real estate is lawfully devoted and does not provide for the extension thereof to other parts of the lot or to any other real estate than that upon which the use was actually established on April 14, 1939; and that the City, while specifically preserving the use of the property, provides by section 8, that the non-conforming building shall not be structurally altered. The lower court, in passing upon these questions, says: "It does not appear to the court a part of sound judgment and good reason that the legislature intended, through the exemption contained in Section 2 of the validating act, to place plaintiff's property in a more favorable position than other property within the district, except to permit the continuation of his pre-existing use. It is the opinion of this court that the legislature intended that plaintiff's use might continue subject to the other restrictions of the ordinance, all of which are enacted for the general welfare of the community involved."

We think that, by changing the language of section 2 by substituting for the noun "use" therein, the verb, the section means: "The provisions of this act shall not prevent any real estate from being lawfully used as it was lawfully used prior to the effective date hereof, and it may be so used hereafter." This we think is the plain meaning of the section. The object of the legislature in adding this section 2 was to prevent injury to the business or occupation of any lawfully existing business or use to which the property was at the time of the passage of the act subjected, while not interfering in any way with the restrictions which might be imposed upon the properties thereafter. The zoning ordinance, with its exceptions, was enacted for the benefit of the community, while at the same time not inflicting any undue hardship upon the individual in his established occupation.

Other matters originally argued by the defendants in the municipal court were not passed upon and were not necessary to a decision. Being not appealed from they are not argued by the defendants or considered here.

We are satisfied that the ruling of the municipal court was correct; and the cause is affirmed.—Affirmed.

BLISS, C. J., and STIGER, OLIVER, MILLER, GARFIELD, and WENNERSTRUM, JJ., concur.