**Mrs. Glenn WELDON, Appellant,**

v.

**ZONING BOARD OF the CITY OF DES MOINES, Appellee,**

**Peter P. Dickinson et al., Intervenors-Appellees.**

**No. 2–57656.**

Supreme Court of Iowa.

Feb. 16, 1977.

Curt L. Sytsma, of Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, for appellant.

Eugene E. Olson, Asst. City Atty., for appellee Zoning Board.

J. Edward Power, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for intervenors-appellees.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves a zoning controversy. The trial court held in a certiorari action initiated by plaintiff Mrs. Glenn Weldon that defendant Zoning Board of the City of Des Moines did not act illegally in granting intervenor Dickinsons', Inc. the right to operate a retail store next door to her home in a neighborhood zoned for single family residential (R–1) uses. We reverse the trial court.

The controversy was precipitated by a complaint made to the City by Mrs. Weldon in the fall of 1972. Intervenors Peter P. Dickinson, Russell B. Dickinson, and Warren W. Dickinson owned the property immediately west of Mrs. Weldon's, located in a neighborhood zoned for single family residential (R–1) uses. Dickinsons', Inc. is a corporation owned by them which leased the premises and operated a women's ready-to-wear business there. The property has a local address of 4801 Observatory Road.

The immediate cause of Mrs. Weldon's complaint was the construction of an asphalt parking lot on the Dickinson property which included an area previously covered by grass and foliage. As a result, the parking lot came within about five feet of Mrs. Weldon's property and exposed intervenors' use of the property to her view.

Investigation of the Weldon complaint led to a proceeding before the City zoning enforcement officer in which he denied an application by Dickinsons', Inc. for a certificate of occupancy. The applicable zoning ordinance required a certificate of occupancy for a nonconforming use.

Dickinsons', Inc. appealed to the zoning board of adjustment. The board notified neighboring property owners including Mrs. Weldon of a public hearing to consider the "[a]ppeal for a use variance * * *." At the hearing, the Dickinsons were heard in person and through their attorney in support of the appeal, and several neighbors including Mrs. Weldon were heard in opposition. After the hearing the board filed its resolution sustaining the appeal, describing it as an "appeal for a use variance to permit using the property at 4801 Observatory Road as a retail store."

Mrs. Weldon filed a petition for certiorari in district court alleging the action of the board was illegal because the use of the property was in violation of the City zoning ordinance, was not a legal nonconforming use, and did not meet ordinance requirements for issuance of a use variance. The Dickinsons and Dickinsons', Inc. intervened on the side of the board. They denied Mrs. Weldon's allegations and raised a defense that her action was barred by laches.

The certiorari action was tried in district court. In addition to the return to the writ of certiorari, which included a transcript of the hearing before the board, the trial record contains testimony of numerous witnesses. After trial the court entered judgment upholding the action of the zoning board and annulled the writ. This appeal by Mrs. Weldon followed.

Although zoning ordinances of the City of Des Moines were discussed in the hearing before the board of adjustment, referred to in the pleadings in the district court, quoted in trial briefs, mentioned in testimony, and relied on by the trial court in its decision, provisions of the ordinances were not formally introduced or established in the certiorari proceeding. Both the board and intervenors contend Mrs. Weldon's appeal must fail because of her failure to plead and prove provisions of the ordinances she relies on for reversal.

Moreover, the case is further complicated by the fact one of the contentions advanced by Mrs. Weldon is that the board violated an ordinance provision by failing to set out the reason for its action in its resolution sustaining the Dickinsons', Inc. appeal. If the board did violate the ordinance in the respect alleged, and if the violation is jurisdictional, then the case must go back to the board for completion of the proceedings.

Thus we have two threshold issues to resolve. The first is whether the zoning ordinances are properly before us, and the second is, if so, whether the proceeding aborted before the board of adjustment because of the board's failure to state the reason for its action in its resolution. Then, once over these hurdles, we examine the statute governing the mode and scope of review of the board's action in district court. Finally, we decide the merits of the certiorari judgment.

■ I. *Proof of the zoning ordinances.* The general rule is that a court of general jurisdiction will not take judicial notice of a municipal ordinance nor apply its provisions in a case in which the ordinance has not in some proper manner been made part of the record. *Worden v. City of*

*Sioux City,* 260 Iowa 1219, 1223, 152 N.W.2d 192, 194 (1967). However, when the district court sits to review actions of a lower tribunal in which an ordinance constituted the law of the forum, the ordinance becomes part of the law to be applied in district court even though not introduced or established there. See *Town of Grimes v. Board of Adjustment, Polk County,* 243 N.W.2d 625, 627 (Iowa 1976).

■ This exception to the general rule is based on the principle that when an ordinance is a matter of law of which the inferior tribunal is required to take judicial notice, the ordinance remains a matter of law in the appellate court. We approve the reasoning of the Ohio Supreme Court to this effect in *Orose v. Hodge Drive-It-Yourself Co.,* 132 Ohio St. 607, 613, 9 N.E.2d 671, 673 (1937):

> An ordinance, like a state statute, is a matter of fact, except within the jurisdiction of its adoption. In the case at bar the ordinance was a matter of law in the municipal court and by what transformation it could become matter of fact in the reviewing courts on appeal is not apparent. If it was law in the trial court, it was law in the reviewing courts below; if it was the law there, it is law here. Since the courts are presumed to know the law and take notice of it judicially, it is not required that the ordinance be set forth in the record.

For early recognition of the principle in this court, see *State for the Use of the City of Dubuque v. Leiber,* 11 Iowa 407, 409 (1860).

■ We hold that the pertinent Des Moines zoning ordinances were the law of the forum before the board of adjustment and remained matters of law on appeal.

II. *The jurisdictional issue.* A provision in the zoning ordinance governing the proceeding before the board of adjustment is as follows:

> The concurring vote of three of the members of the Board shall be necessary to reverse any order, requirement, decision or determination of the Zoning Enforcement Officer, or to decide in favor of the

applicant on any matter which it is required to pass under this ordinance; *provided, however, that the action of the Board shall not become effective until after the resolution of the Board, setting forth the full reason for its decision and the vote of each member participating therein, has been filed.* (italics added).

In the present case, the board filed a resolution containing its decision but not setting forth any reason for it. Mrs. Weldon contends this omission made the decision illegal. Because we reverse the trial court on another ground we do not decide whether this contention was timely urged in district court, nor do we decide whether the omission constituted illegality within the meaning of certiorari rules.

■ However, we must decide whether the omission is jurisdictional. If it made the board's decision void, no subject matter existed for the subsequent litigation. When lack of subject matter jurisdiction appears, we must recognize it even when the parties would prefer that we did not. *City of Clinton v. Owners of Property, etc.,* 191 N.W.2d 671, 677 (Iowa 1971).

■ The general principle is that when a requirement of this kind does not appear to be of the essence of the law but rather relates to the form and manner of decision, noncompliance does not make a subsequent judgment void. *Borough of Paramus v. Ridgewood Park Estates,* 42 N.J.Super. 369, 375, 126 A.2d 660, 663 (1956). Applying this principle in the present case, we conclude the phrase requiring the board resolution to set forth the full reason for its decision is a specification of form which is independent of the decision itself, and therefore the omission of the statement of the reason for the decision is not jurisdictional.

III. *The mode and scope of district court review.* Although the issue of proper mode and scope of review is not determinative of this appeal, we believe it is appropriate to examine the issue for the guidance of the bench and bar.

■ ■ Except when modified by statute or constitutional principle, certiorari provides limited review of factfindings of an inferior tribunal. In ordinary certiorari actions, the findings of fact of the inferior tribunal may not be upset if they are supported by substantial evidence before that tribunal. *Reed v. Gaylord,* 216 N.W.2d 327, 334 (Iowa 1974). However, a statute modifies this rule in zoning cases.

Code § 414.18 includes the following:

If upon the hearing which shall be tried de novo it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

In *Trailer City, Inc. v. Board of Adjustment,* 218 N.W.2d 645, 647–648 (Iowa 1974), we construed this section and Code § 358A.21, a similar provision which relates to county zoning. We said:

The term "de novo" as used in either section does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality raised by the statutory petition for writ of certiorari. Upon the hearing to determine such questions the trial court, as both sections 414.18 and 358A.21 provide, " * * * may reverse or affirm, wholly or partly, or may modify the decision brought up for review." The action of the trial court has the effect of a jury verdict and is appealable to us on assigned errors only.

This statement does not specify what effect the statutes have on the mode and scope of district court review when a claim of illegality in the certiorari action involves an issue of the sufficiency of evidence to support the decision of the inferior tribunal. Nor was this problem presented in our subsequent cases, *Johnson v. Board of Adjustment, etc.,* 239 N.W.2d 873 (Iowa 1976), and

*Giesey v. Board of Adjustment of Iowa City,* 229 N.W.2d 258 (Iowa 1975), which are on that basis distinguishable.

■ However, the issue was presented and decided in *Anderson v. Jester,* 206 Iowa 452, 221 N.W. 354 (1928). Construing the provision which is now Code § 414.18, the court said:

The statute does not require the board of adjustment to return findings of fact, nor does it, expressly or by implication, limit review to questions of illegality or jurisdiction or other questions appearing upon the face of the record anterior to the filing of petition in certiorari. On the contrary, it expressly declares that the "hearing" (cause) shall be tried *de novo.* If all the material facts appear in the record, or are not disputed, or only questions arising upon the record are presented, the taking of evidence is not necessary. Questions likely to arise in such cases are of such great importance that the Legislature appears to have had in mind that the parties should, on the question of the legality of the board's action, be entitled to a full and complete hearing before a proper court of record, and according to accepted judicial method of ascertaining facts. The parties are not, on certiorari, bound by the finding or opinion of the local board on the facts, or by the evidence offered there, or by knowledge outside of the evidence on which the board may have acted, but, ordinarily at least, are entitled to take testimony when a determinative issue of fact is raised. 206 Iowa at 461–462, 221 N.W. at 359.

What use does the district court make of the factual record in the certiorari proceeding? In *Anderson,* the court answered this question as follows:

The trial *de novo* permitted, and the determination of whether testimony is necessary, and the admission of such testimony, or the reference permitted by section [441.18], should be confined to the questions of illegality raised by the petition for the writ. Arbitrary and unreasonable actions, or proceedings not authorized by

or contrary to the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to, or unsupported by facts on which the power to act depends, or within which the power must be exercised, are illegal. If one of the grounds of alleged illegality is arbitrary, unreasonable, or discriminatory action on the part of the board, and on the facts the reasonableness of the board's action is open to fair difference of opinion, there is, as to that, no illegality. The court is not, in such case, authorized to substitute its judgment for that of the local board. 206 Iowa at 463, 221 N.W. at 359.

Therefore the teaching of the *Anderson* case is that in a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision. If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.

■ Under the principles explained in *Trailer City, Inc. v. Board of Adjustment supra,* 218 N.W.2d 647–648, the findings of fact of the district court have the effect of a special verdict of a jury and an appeal to this court is like that in an ordinary proceeding. See *Johnson v. Board of Adjustment, etc.,* 239 N.W.2d 873, 888 (Iowa 1976); *Deardorf v. Board of Adjustment, etc.,* 254 Iowa 380, 118 N.W.2d 78 (1962).

IV. *The merits of the appeal.* The board and defendants asserted in district court and contend now that the decision of the board was based on its conclusion under the applicable zoning ordinances that intervenors' use of the property was a legal nonconforming use. Mrs. Weldon alleges Dickinsons', Inc. did not advance that theo-

ry before the board nor did it offer any evidence to the board to support a decision on that basis. The trial court did not pass on the use variance issue, and it is not before us.

The Des Moines zoning ordinance was effective April 15, 1939. No evidence was adduced before the board which would permit the board to find intervenors' premises were used as a retail store before that date. In fact, the attorney for intervenors acknowledged before the board an inability to establish when the use commenced. He asserted only that retail selling had probably occurred there in the early 1940's. If the legality of the board's decision were to be tested solely by sufficiency of evidence before the board of use of the property as a retail store before April 15, 1939, it could not be sustained. We do not decide whether intervenors should be barred from relying on the nonconforming use theory on the ground they did not urge it before the board but instead raised it for the first time in district court.

As previously explained, the parties had the right under Code § 414.18 to introduce additional evidence in district court, and the court was obliged to find the acts anew. Intervenors did offer some evidence in district court that the premises were used before April 15, 1939, for retail selling. We will assume, without deciding, that this evidence was substantial and would support a district court finding of fact to that effect.

However, evidence of the subsequent use of the premises, when viewed in its light most favorable to the board and intervenors, does not support the conclusion of law that a legal nonconforming use existed on the premises at the time of the present litigation.

The evidence showed that on April 15, 1939, two buildings existed on the premises. One was the residence occupied by the owners Warren and Flora Dickinson and their daughter Doris. The other was a double garage with shed attached, located behind the house. Warren Dickinson, who was a surveyor, stored his equipment in the shed. He died in 1941. Doris Dickinson, who was a women's apparel manufacturer's representative, at some point began to store her merchandise in the shed. The garage was used to store automobiles but later was also used for storage of merchandise and empty boxes by Doris. Eventually Doris began to use the shed to show and sell merchandise to customers. She put a desk in it and maintained an office there.

In 1952 the garage and shed were torn down. Doris obtained a building permit to erect a private garage on the site. A new garage and adjacent room to the east were built. In about 1953 a separate building was erected east of the 1952 structure, and a common roof was built to connect them. The rooms adjacent to the garage were used by Doris for her business. She continued to use the garage for storage of merchandise as well as automobiles.

Although Doris was shown to have stored merchandise in the house in subsequent years, no evidence was offered that the house was used in her business before the effective date of the zoning ordinance.

Doris died in 1970. Her nephews, intervenors Peter P., Russell B., and Warren W. Dickinson, inherited the property. They formed Dickinsons' Inc. to which they leased the property to carry on Doris' business. In 1971 intervenors secured a building permit upon an asserted basis they desired to alter the interior of an "existing legal nonconforming retail store." After obtaining the permit, intervenors removed much of the common wall which separated the garage from the middle room. They replaced the garage door with a picture window, paneled its walls, installed light fixtures, built dressing rooms and shelves, and carpeted the floor. By this process they converted the three rooms to exclusive use as a retail store. They used the house as an office, for storage of merchandise, and as a lunch and restroom facility for employees. At the time of trial they had 11 part-time employees assisting in operation of the business.

In the fall of 1972, intervenors began construction of the asphalt parking lot to accommodate customers, and that activity

set in motion the events culminating in this litigation.

Among other grounds, Mrs. Weldon attacks the trial court's holding on the basis that the 1952 removal of the garage and annex extinguished the right to use those structures for a nonconforming use. She alleges this right could neither be perpetuated nor revived by construction of a new structure on the same site.

In 1952 and 1953 a different zoning ordinance was in effect than at the time of subsequent events involved here. The earlier ordinance is the same one which we interpreted in *McJimsey v. City of Des Moines,* 231 Iowa 693, 2 N.W.2d 65 (1942), and *Granger v. Board of Adjustment,* 241 Iowa 1356, 44 N.W.2d 399 (1950). It was the original zoning ordinance of the City of Des Moines.

This ordinance provided the following, in § 2A–8, regarding nonconforming uses:

> The lawful use of land existing at the time of the passage of this ordinance, although such use does not conform to the provisions hereof, may be continued, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance.

> The lawful use of a building existing at the time of this ordinance, may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building provided no structural alterations, except those required by law or ordinance, are made therein. * * *

The *McJimsey* and *Granger* holdings stand for the proposition that this provision bars new construction of a nonconforming use, either in the form of new buildings or new additions to an existing building. An addition to an existing building was accordingly barred in *McJimsey.* In *Granger,* this court held the second paragraph of the provision authorized reasonable repair of a building housing a nonconforming use so long as a structural alteration was not involved. However, even this limited authorization extended only to "a building existing at the time of this ordinance." It did not permit the prior use to survive voluntary demolition of that building. The use did not have a life separate from the building.

▮ Under these interpretations, any nonconforming use existing in the Dickinson building from the effective date of the ordinance until the building was torn down was extinguished with the tearing down of the structure housing it. See *Sitgreaves v. Board of Adjustment of Town of Nutley,* 136 N.J.L. 21, 54 A.2d 451 (1947); 8A McQuillin Municipal Corporations § 25.194 (1976). The new construction was not merely "reasonable repair of the building due to depreciation and deterioration." See *Granger v. Board of Adjustment,* supra, 241 Iowa at 1364, 44 N.W.2d at 403.

Therefore we agree with Mrs. Weldon that any right to operate a retail store on intervenors' property as a legal nonconforming use was lost in 1952.

▮ This conclusion constitutes an answer to intervenors' defense based on laches. Mrs. Weldon did not move into her home next door until 1953. The record does not show she can be charged with knowledge of the prior events. She had no knowledge of the facts which would have given her a cause of action based on them.

▮ Under the general rule the doctrine of laches will not lie when the complainant had no knowledge of the facts giving rise to the cause of action. *Shives v. Niewoehner,* 191 N.W.2d 633, 637 (Iowa 1971). We do not decide whether the doctrine would have any application if our decision were predicated on a ground based on later events. However, we hold Mrs. Weldon is not barred by laches from relief on the ground which serves as the basis of our decision.

▮ We also reject intervenors' contention that they acquired vested rights under the 1971 building permit which cannot be divested in this case. This permit was invalid in its inception, and therefore intervenors did not acquire vested rights under it. *B. & H. Investments, Inc. v. City of Coralville* 209 N.W.2d 115 (Iowa 1973); *Board of*

*Adjustment of City of Des Moines v. Ruble,* 193 N.W.2d 497, 507 (Iowa 1972).

The board acted illegally in sustaining intervenors' appeal for an occupancy permit. The trial court erred in annulling the writ of certiorari.

REVERSED.