# IN THE SUPREME COURT OF IOWA

No. 22 / 05–1064

Filed March 7, 2008

**BONTRAGER AUTO SERVICE, INC.; SKAY AUTOMOTIVE SERVICE, INC.; BRIAN K. DeCOSTER; ROGERS RENTAL, LLC; MARLYS BREESE; THE BREESE CO. INC.; GREGG R. REDLIN; EUGENE F. FISHER; ERIN K. FISHER; EDWARD I. SCHMUCKER; K & G; MICHAEL A. McNIEL, TODD DAVIS, CARMEN DAVIS, SAND ROAD INVESTORS; KEITH L. MILLER; DEBRA S. MILLER; PAUL M. KENNEDY, JR.; MARY FRANCES KENNEDY; WILLIAM B. KRON, JR.;** and **DERROLD M. FOSTER,**

>    Appellees,

vs.

**THE IOWA CITY BOARD OF ADJUSTMENT**,

>    Appellant.

----------------------------------------------------------------------------------------------

**HILLTOP MOBILE HOME COURT,**

>    Appellee,

vs.

**THE IOWA CITY BOARD OF ADJUSTMENT** and **SHELTER HOUSE COMMUNITY SHELTER AND TRANSITION SERVICES,**

>    Appellants.

Appeal from the Iowa District Court for Johnson County, David M. Remley, Judge.

Board of Adjustment and applicant for special exception to zoning regulation appeal district court's decision sustaining objectors' petitions for writ of certiorari and reversing board's approval of special exception. **REVERSED AND REMANDED.**

Sarah E. Holecek, First Assistant City Attorney, Iowa City, for appellant Iowa City Board of Adjustment.

Timothy J. Krumm and Anne E. Daniels of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellant Shelter House Community Shelter and Transition Services.

Gregg Geerdes, Iowa City, for appellees Bontrager Auto Service, Inc. et al.

Raymond M. Tinnian, Kalona, for appellee Hilltop Mobile Home Court.

**TERNUS, Chief Justice.**

The appellant, Iowa City Board of Adjustment, approved the application of appellant, Shelter House Community Shelter and Transition Services, for a special exception to a local zoning regulation to allow Shelter House to construct transient housing in a commercial district. The appellees, opponents of Shelter House's application, successfully challenged the board's decision in district court. Although the district court rejected the objectors' contention the board had failed to make the necessary factual findings, the court ruled there was not substantial evidence to support the board's finding that the proposed transient housing would not substantially diminish or impair property values in the neighborhood. The court also determined the board had improperly interpreted and applied the parking-space requirements governing transient housing.

The board and Shelter House appeal the district court's reversal of the board's approval of Shelter House's application. We agree with the district court that the board made sufficient factual findings, but conclude error was not preserved on the adequacy of the parking spaces. Because we think there was substantial evidence to support the board's finding that property values would not be adversely affected, we reverse the judgment of the district court and remand this case for entry of a judgment affirming the board's decision.

## I. Background Facts and Proceedings.

Shelter House is a nonprofit corporation that has operated transient housing on North Gilbert Street in Iowa City for approximately twenty years. The facility on Gilbert Street is approved for housing twenty-nine transient persons at one time. It was undisputed the shelter has to turn homeless persons away due to a lack of space.

In 2004 Shelter House sought to build a new two-story facility at 429 Southgate Avenue that would provide transitional housing for up to seventy people. This site is zoned intensive commercial, which permits transient housing by special exception. In order to approve a special exception, the board must find the applicant meets the standards set forth for the specific proposed exception, as well as seven general standards to the extent they are applicable.

The Iowa City Department of Planning and Community Development reviewed Shelter House's application and recommended approval. Subsequently, the board held a well-attended meeting at which approximately thirty-seven persons spoke. The main concern of objectors was the possibility of increased criminal activity in the neighborhood, a concern the proponents of the special exception attempted to refute. There was also some evidence elicited relating to property values, with the witnesses for and against the application disagreeing on whether property values would decrease due to the construction of transient housing in the affected neighborhood. Following public comments, the board approved the special exception on a vote of three to one. A written decision granting the application was filed several days later.

Thereafter, neighboring landowners filed petitions for writ of certiorari in the district court, which were consolidated.[1] They claimed the board acted illegally for several reasons, three of which are pertinent to this appeal:

> a. The Board of Adjustment acted arbitrarily and capriciously when it granted the application even though the evidence before the Board was that the requested special use would substantially diminish or impair the property values in the neighborhood of the requested special exception and that the proposed special exception would be injurious to the use and

---

[1]Shelter House was permitted to intervene.

enjoyment of other property in the area. Under these circumstances the actions of the Board are a violation of Iowa City Ordinance 14–6W–2(B)(2)(b).

. . . .

f. The property which is the subject of the special exception does not comply with various provisions of Iowa City zoning law . . . :

    a) There is insufficient parking under Ordinance 14-6N– 1 . . . .

g. The Board has made inadequate findings of fact and conclusions of law, contrary to Ordinance 14–6W–3(D).

The last allegation of illegality—that the board's findings of fact were inadequate—was based on the board's alleged failure to specifically find in its written decision that the proposed exception would not substantially diminish or impair property values in the neighborhood.

In response to the petitions, the board submitted its records to the court, including the application for special exception, the staff report recommending approval of the special exception, written materials and comments received by the board, a transcript of the public hearing, the board's minutes, and the board's written decision. In addition, at the trial on the objectors' petitions, the district court heard further testimony from Robert Miklo, city planner for the City of Iowa City. Miklo testified with respect to the staff report and the board's findings of fact. No other evidence outside the board's records was offered or received.

The court subsequently issued a ruling reversing the board's decision. Although the court decided the board had sufficiently complied with the requirement for written findings of fact, it concluded Shelter House had failed to present substantial evidence the proposed special exception would not substantially diminish or impair property values in the neighborhood. The court also held the board had not correctly interpreted the parking-

space requirements of its ordinance.[2] The board had approved the special exception on the basis that eighteen parking spaces would be sufficient; whereas, under the district court's interpretation, the ordinance would require twenty-two parking spaces.

The board and Shelter House filed timely appeals from the district court's decision. For convenience, any references in this opinion to the board include Shelter House unless the context indicates otherwise.

**II. Issues on Appeal.**

On appeal, the board contends there was substantial evidence to support its determination that property values would not be substantially diminished or impaired by the location of transient housing at the proposed site. With respect to the court's ruling on the required parking spaces, the board asserts that it correctly interpreted the parking-space requirements of its ordinance.

The objectors disagree, of course, with the arguments asserted by the board on appeal. In addition, they claim that, even if the district court's decision on these issues was incorrect, its ruling can nonetheless be upheld on the basis that the board did not make an adequate factual finding on the property-values issue.

In our review of the record, we have discovered a preliminary issue that must be addressed: whether any error with respect to the board's determination of the required number of parking spaces was preserved by the objectors. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) (stating "this court will consider on appeal whether error

---

[2]The city code requires that transient housing provide "one-quarter (¼) parking space per occupant, based on the maximum number of occupants." Iowa City Code § 14-6N-1(J)(1)(j). The parties disagreed on whether persons working at the facility were "occupants" so as to require their inclusion in the calculation of the required number of parking spaces.

was preserved despite the opposing party's omission in not raising this issue at trial or on appeal").  We will address that issue first.

### III.  Error Preservation on Parking-Spaces Objection.

The objectors argued in the district court and again on appeal that the board failed to properly interpret the parking-spaces requirement of the applicable city ordinance and, consequently, acted illegally in approving a special exception that did not propose an adequate number of parking spaces.  In reviewing the record certified by the board to the district court, we are unable to find any discussion of this issue before the board.  The application for special exception stated that the plot plan "shows 18 spaces."  The staff report also reflected this fact and stated, "Eighteen parking spaces are required . . . ." The petitions signed by the opponents to the special exception did not raise any concerns with respect to the parking requirements.  At the board's meeting, city staff presented its report and again specifically informed the board and those present that the property would be required to have eighteen parking spaces.  No one at the meeting challenged the legality of the proposed exception on the basis that it did not comply with the applicable standard for parking spaces.

"In most jurisdictions a reviewing court will not decide an issue which was not raised in the forum from which the appeal was taken. . . .  A reviewing court will not entertain a new theory or a different claim not asserted on the board level."  4 Kenneth H. Young, *Anderson's American Law of Zoning* § 27:37, at 633–34 (4th ed. 1996); *accord* 83 Am. Jur. 2d *Zoning & Planning* § 957, at 791 (2006) ("It has been held that a reviewing court will not decide an issue that was not raised in the zoning board from which an appeal has been taken.").  Our court has similarly held that "issues must first be presented to the agency in order to be preserved for appellate review."  *State ex rel. Miller v. DeCoster*, 608 N.W.2d 785, 789

(Iowa 2000); *accord Licari v. Bd. of Educ.*, 721 N.Y.S.2d 372, 373 (App. Div. 2001); *Iwan v. Zoning Bd. of Appeals*, 677 N.Y.S.2d 190, 191 (App. Div. 1998); *Leoni v. Whitpain Twp. Zoning Hearing Bd.*, 709 A.2d 999, 1002 (Pa. Commw. Ct. 1998). Based upon this principle and the record before us, we conclude the issue concerning the alleged inadequacy of the proposed parking spaces, which was not raised at the hearing before the board of adjustment, has not been preserved for this court's review.

**IV. Sufficiency of Board's Factual Finding Regarding Impact on Property Values.**

The Iowa City Code requires the Iowa City Board of Adjustment to render its decision in writing, "including findings of fact and conclusions of law." Iowa City Code § 14–6W–3(D). It is undisputed the board failed to make a specific finding or conclusion in its written decision regarding the effect of the proposed special exception on property values. This issue was of critical importance because, before the board may approve an application for a special exception, the board must find the applicant has met several general standards. One of those standards states: "The specific proposed exception will not be injurious to the use and enjoyment of other property in the immediate vicinity and will not substantially diminish or impair property values in the neighborhood." *Id.* § 14–6W–2(B)(2)(b).

Notwithstanding the board's failure to specifically address this standard in its decision, the district court concluded the board had substantially complied with the requirement of written findings of fact and conclusions of law. The board urges this court to reach the same conclusion with respect to the adequacy of its written decision.

The Iowa City ordinance codifies the rule adopted by our court "that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding." *Citizens Against the Lewis &*

*Clark (Mowery) Landfill v. Pottawattamie County Bd. of Adjustment*, 277 N.W.2d 921, 925 (Iowa 1979). We agree with the district court that substantial—as opposed to literal—compliance with the written-findings requirement is sufficient.

In *Thorson v. Board of Supervisors*, 249 Iowa 1088, 90 N.W.2d 730 (1958), we held a board's substantial compliance with a statutory requirement was satisfactory, noting "the requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency be wholly paralyzed." 249 Iowa at 1097, 90 N.W.2d at 735; *accord Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 887 (Iowa 1976) (" '[O]nly where it clearly appears there was a failure to substantially comply with the statutory requirements will there be found jurisdiction violations.' " (quoting *Bd. of Educ. v. Iowa State Bd. of Pub. Instruction*, 261 Iowa 1203, 1210, 157 N.W.2d 919, 923 (1968)). More recently, in *Obrecht v. Cerro Gordo County Zoning Board of Adjustment*, 494 N.W.2d 701 (Iowa 1993), we held substantial compliance with a zoning ordinance was sufficient. In that case, the county zoning ordinance required that an application for special use be signed by the landowner. *Obrecht*, 494 N.W.2d at 703. The application at issue had been signed by the lessee of the land, not the owner. *Id.* at 702. The owner had, however, appeared at and participated in the hearing on the application and had voiced no opposition. *Id.* at 703. We held the owner's presence at the hearing was substantial compliance with the ordinance requiring the owner's signature on the application because "the owner was available to verify his support of the application and to answer any questions." *Id.* Therefore, "[t]he objectives of the owner filing requirement were more than satisfied." *Id.*

As implied by this statement from *Obrecht*, "substantial compliance" means the statute or rule " 'has been followed sufficiently so as to carry out

the intent for which it was adopted.' " *Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988) (quoting *Smith v. State*, 364 So. 2d 1, 9 (Ala. Crim. App. 1978)). Thus, the reviewing court must determine based on the facts of the particular case whether the actual compliance has accomplished the purpose of the statute or rule. *Id.* Consequently, we begin with an examination of the purpose of the requirement at issue.

This court was persuaded to adopt a rule requiring written findings by the following "compelling considerations": " 'facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.' " *Citizens*, 277 N.W.2d at 925 (quoting K. Davis, *Administrative Law Treatise* § 16.05 (2d ed. 1978)). Consistent with these considerations, we noted in *Citizens* that a board's findings "must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Id.*; *accord Bd. of Dirs. v. Justmann*, 476 N.W.2d 335, 340 (Iowa 1991). Here, the objectors appear to claim that, because there is no mention of the property-values issue in the board's written decision, the board failed to make a decision on this issue, thereby rendering its action granting the special exception illegal.

Our review of the record convinces us that neither the objectors nor the district court had to guess whether the board considered and resolved the property-values issue. The board was clearly aware of the requirement that the special exception could not be approved if it substantially impaired neighboring property values. Shelter House addressed this standard in its application, and later, at the meeting scheduled to consider the application, city planner Robert Miklo told the board it must consider, among other items, the requirement that "the proposed special exception . . . will not

substantially diminish or impair property values in the neighborhood." In addition, several of the numerous persons who spoke at the hearing addressed the issue of property values.

After the public comment portion of the meeting concluded, the board members expressed their views. Board member Mauer was the first to speak, and he expressly focused his remarks on "the general standards." Mauer commented on several of these standards, including the matter of property values. He stated the impact on property values was "a big issue" that could not be determined for sure until someone decides to sell property in the area after Shelter House is there. Mauer was most concerned, however, regarding the impact of the facility on the comfort, safety, and health of neighboring residents (another general standard). At this point in the proceedings, board counsel Holecek reminded the board that the board had to "conclude each of these standards has been met." Board member Mauer then voted "no," immediately followed by board member Wright, who discussed the general standards without any specific mention of property values, and then voted "yes." Board member Leigh then commented on the impact of the current transient house on North Gilbert on the surrounding neighborhood and concluded by saying the proposal "has met the standards as were previously mentioned and I will vote in favor of this." Board member Alexander then stated, "For the reasons already mentioned, I too am going to vote in favor." A roll call vote was then taken, resulting in approval of the application for a special exception on a vote of three to one.

The board later filed a written decision on the Shelter House application that contained findings of fact, conclusions of law, and a disposition. In its conclusions of law, the board concluded "that developing the Shelter House at [the proposed] location will not be detrimental overall to the public health, safety, comfort or general welfare," as required by

section 14–6W–2(B)(2), but did not make specific reference to the other portion of section 14–6W–2(B)(2) dealing with property values.

These facts show that with respect to the property-values aspect of general standard section 14–6W–2(B)(2), the board did not literally comply with the rule that findings of fact and conclusions of law be in writing. We think, however, that there was substantial compliance. Considering the board's written decision in the context of the meeting at which the vote memorialized in the decision occurred, we are able "to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Citizens*, 277 N.W.2d at 925. We think it is sufficiently clear that the board considered the general standards, including whether the proposed special exception would "substantially diminish or impair property values in the neighborhood," and concluded by a majority vote that these standards were met. The board's failure to reference the entirety of the general standard appearing in section 14–6W–2(B)(2) in its written conclusions of law is not a fatal flaw that warrants reversal.

### V. Scope and Standard of Review of Property-Values Issue.

Our standard of review of the district court's ruling on the property-values issue is dependent upon resolution of a disagreement between the parties with respect to the proper role of the district court in its review of the board's decision. Shelter House maintains that the district court must conduct a substantial-evidence review of the board's findings. *See generally Grant v. Fritz*, 201 N.W.2d 188, 195 (Iowa 1972) ("The 'substantial evidence rule' is utilized in judicial checking of findings of fact . . . ."). Under that standard of review, the *board's* findings are binding if supported by substantial evidence. In contrast, the opponents claim the district court is

entitled to find the facts anew and on appeal to this court, the *district court's* findings are binding if supported by substantial evidence.[3]

Unlike the typical certiorari case, in which the standard of review is well established, the review of decisions of boards of adjustment has always been somewhat problematic. Iowa Code chapter 414 (2003) provides the procedure for review of a decision of a city board of adjustment.[4] A person aggrieved by a board decision may file a petition for writ of certiorari in the district court, identifying the claimed illegality of the board's action. Iowa Code § 414.15 (stating petition must "specify[] the grounds of the illegality" of the board's decision). Upon the filing of a petition, the board of adjustment must make a return to the writ, which includes the "papers acted upon by it" and "other facts as may be pertinent and material to show the grounds of the decision appealed from." *Id.* § 414.17.

At this point, the review process reveals its unique characteristics. Section 414.18 states:

---

[3]It is not clear that the district court made its own factual findings as contended by the opponents. The dispositive analysis from the district court's ruling seems to focus on the board's findings rather than finding the facts anew:

> I conclude that proponents of the Special Exception failed to present substantial evidence that the proposed Special Exception will not substantially diminish or impair property values in the neighborhood. The minutes of the public hearing, the transcript of the public hearing and the decision of the Board of Adjustment, collectively, do not contain substantial evidence *to support a finding by the board* that the proposed Special Exception will not substantially diminish or impair property values in the neighborhood. Therefore, the decision of the Board of Adjustment granting the Special Exception must be reversed.

(Emphasis added.) Although one could argue based on a reading of the court's entire discussion of this issue that the court reweighed the evidence, we need not determine whether the trial court found the facts anew, as this question does not affect our ultimate resolution of this appeal.

[4]Comparable statutory provisions govern review of county boards of adjustment. *See* Iowa Code §§ 335.18-.21. We have said the review provisions of chapter 335 and chapter 414 should be interpreted identically. *See Bluffs Dev. Co. v. Bd. of Adjustment*, 499 N.W.2d 12, 14 (Iowa 1993); *Trailer City, Inc. v. Bd. of Adjustment*, 218 N.W.2d 645, 647 (Iowa 1974).

> If upon the hearing which *shall be tried de novo* it shall appear to the court that testimony is necessary for the proper disposition of the matter, *it may take evidence* or appoint a referee to take such evidence as it may direct and report the same to the court with the referee's findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

*Id.* § 414.18 (emphasis added). This court has attempted over the years to interpret what the legislature intended when it provided for a trial de novo and for the taking of additional necessary evidence by the district court.

In our first case to interpret section 414.18,[5] *Anderson v. Jester,* 206 Iowa 452, 221 N.W. 354 (1928), we considered "what questions may be raised on certiorari." 206 Iowa at 462, 221 N.W. at 359. Relying on section 414.15, we held only issues of illegality are a permissible basis for relief. *Id.* at 463, 221 N.W. at 359. We observed that "arbitrary and unreasonable action or proceedings" that are not authorized, are contrary to the statute defining the powers of the board, or are unsupported by facts upon which the board's power to act depends are illegal. *Id.* These grounds of illegality track those that are raised in certiorari actions generally. *See Nash Finch Co. v. City Council,* 672 N.W.2d 822, 825 (Iowa 2003) (" 'An illegality is established if the board has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary, or capricious.' " (quoting *Perkins v. Bd. of Supervisors,* 636 N.W.2d 58, 64 (Iowa 2001)). *See generally* 3 Arden H. Rathkopf et al., *Rathkopf's The Law of Zoning & Planning* § 62:32, at 62–66 (2001) (noting same grounds) [hereinafter *Rathkopf's Law of Zoning*].

---

[5]Over the years, the Code editor has renumbered the chapter dealing with city zoning, so some of our early cases refer to the relevant sections of chapter 414 by a different number. For clarity, we will simply use the current section numbers in discussing these decisions. The substance of the pertinent code provisions has not changed.

We also considered in *Anderson* "the method and scope of review by the trial court permitted by [this] legislative enactment." *Anderson,* 206 Iowa at 454, 221 N.W. at 355. Noting that the board of adjustment is not required "to return findings of fact," this court explained the purpose of the district court's power to take additional evidence as follows:

> If all the material facts appear in the record, or are not disputed, or only questions arising upon the record are presented, the taking of evidence is not necessary. Questions likely to arise in such cases are of such great importance that the Legislature appears to have had in mind that the parties should, *on the question of the legality of the board's action,* be entitled to a full and complete hearing before a proper court of record and according to accepted judicial method of ascertaining facts.

*Id.* at 461–62, 221 N.W. at 359 (emphasis added). Thus, when the record is inadequate to determine the legality of the board's action, additional evidence is necessary and may properly be taken by the district court.

Our discussion in *Anderson* of the district court's scope of review was not as clear. We said:

> *The parties are not, on certiorari, bound by the finding or opinion of the local board on the facts,* or by the evidence offered there, or by knowledge outside of the evidence on which the board may have acted, but, ordinarily at least, are entitled to take testimony when a determinative issue of fact is raised.

*Id.* at 462, 221 N.W. at 359 (emphasis added). Later in the same opinion, this seemingly expansive de novo review is qualified:

> If it had been intended to give to the aggrieved party the right to remove the determination of the entire matter from the local officers and board to the court, it is reasonable to suppose that the remedy provided would have been appeal rather than certiorari. . . .
>
> . . . .
>
> . . . The trial *de novo* permitted, and the determination of whether testimony is necessary, and the admission of such testimony, . . . should be confined to the questions of illegality raised by the petition for the writ. . . . If one of the grounds of alleged illegality is arbitrary, unreasonable, or discriminatory

> action on the part of the board, and on the facts the reasonableness of the board's action is open to a fair difference of opinion, there is, as to that, no illegality. *The court is not, in such case, authorized to substitute its judgment for that of the local board.*

*Id.* at 462–63, 221 N.W. at 359 (emphasis added). We noted that arbitrary and unreasonable action includes action that is not authorized by the statute defining the board's power or that is contrary to or unsupported by the required facts. *Id.* at 463, 221 N.W. at 359.

Although one could argue our discussion of the statute in *Anderson* did not completely clarify the district court's de novo fact-finding role, our subsequent cases consistently limited the trial de novo "to the questions of illegality raised by the petition for the writ." *Deardorf v. Bd. of Adjustment,* 254 Iowa 380, 383, 118 N.W.2d 78, 80 (1962); *accord Vogelaar v. Polk County Zoning Bd. of Adjustment,* 188 N.W.2d 860, 863 (Iowa 1971). Our cases also confirmed that the statute did not provide "for trial de novo by equitable proceedings." *Deardorf,* 243 Iowa at 383–85, 118 N.W.2d at 80 (examining sufficiency of evidence before the *board* on question of unnecessary hardship); *accord Trailer City, Inc. v. Bd. of Adjustment,* 218 N.W.2d 645, 647 (Iowa 1974) ("The term 'de novo' . . . does not bear its equitable connotation."); *Vogelaar,* 188 N.W.2d at 863 (noting trial is de novo only "in the sense that testimony in addition to the return may be taken if it appears to the court necessary for the proper disposition of the matter"); *Zilm v. Zoning Bd. of Adjustment,* 260 Iowa 787, 794–95, 150 N.W.2d 606, 611 (1967) (reversing district court's determination of boundary line location contrary to that found by the board, stating there was no basis for finding board did not act reasonably and therefore, court could not substitute its judgment).

We now turn to our decision in *Weldon v. Zoning Board,* 250 N.W.2d 396 (Iowa 1977). In that case, we considered "what effect the statutes have

on the mode and scope of district court review when a claim of illegality in the certiorari action involves an issue of the sufficiency of evidence to support the decision of the inferior tribunal." *Weldon*, 250 N.W.2d at 400. We observed that section 414.18 had "modified" the rule applicable in ordinary certiorari actions that "the findings of fact of the inferior tribunal may not be upset if they are supported by substantial evidence before that tribunal." *Id.* We attributed this interpretation of section 414.18 to our decision in *Anderson*:

> Therefore, the teaching of the *Anderson* case is that in a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision. If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.

*Id.* at 401. It appears, then, that in *Weldon* we interpreted section 414.18 to place the entire fact-finding role on the district court even when the claimed illegality was that the evidence was not sufficient to support the board's decision. *See Giesey v. Bd. of Adjustment*, 229 N.W.2d 258, 260 (Iowa 1975) (holding illegality exists when there is not substantial evidence to support the decision of the *board*).

Notwithstanding our attempt in *Weldon* to clarify what the legislature meant by the language "tried de novo," in at least two subsequent cases in which the alleged illegality of the board's decision was a lack of substantial evidence to support its decision, the district court simply reviewed the sufficiency of the evidence to support the board's decision without making its own fact-findings. *See Cyclone Sand & Gravel Co. v. Bd. of Adjustment*, 351 N.W.2d 778, 783 (Iowa 1984); *Jorgensen v. Bd. of Adjustment*, 336

N.W.2d 423, 426 (Iowa 1983). These cases appear to be more in line with a case that predated *Weldon, Buchholz v. Board of Adjustment,* 199 N.W.2d 73 (Iowa 1972), which considered a county zoning statute identical to the city zoning statute at issue in this case. In *Buchholz,* we stated that "de novo" as used in section 335.21

> does no more than permit the introduction of additional evidence in district court if the court finds that course necessary for proper disposition of the cause. With that qualification the decision of the administrative body is conclusive unless arbitrary, capricious or otherwise illegal.

199 N.W.2d at 78.

In considering the scope of review in the present appeal, this court is faced with the problem of ascertaining the meaning of section 414.18 in the face of conflicting case law. It is helpful, then, to examine general authorities in this area of the law. In *Rathkopf's Law of Zoning,* the authors state the review provision in the standard zoning enabling act "gives the court the power to take evidence when there is an issue raised by the pleadings in the proceeding *other than whether the determination is supported by substantial evidence.*"[6] *Rathkopf's Law of Zoning* § 62:46, at 62–123 (emphasis added).

> In those cases in which the issue is whether the action of a board is based upon substantial evidence, the determination as to the validity of a board's decision should be based upon the record of the proceedings before the board as supplemented by the testimony taken before the court. It should not decide the case merely on the basis of the testimony taken before it if the facts found by the court therein are materially at variance with those found by the board. The court cannot make new findings *on issues presented below.*

*Id.* at 62–129 (emphasis added).

---

[6]Section 414.18 of Iowa's zoning act is identical to the standard zoning enabling act with the exception of the additional language in the Iowa act, "which shall be tried de novo."

The author clarifies that, with respect to issues of substantial evidence, "[i]t is only in those extraordinary cases in which it is not clear from the record what a board considered and how it arrived at its findings that additional testimony will ordinarily be taken in order for a court to evaluate [the board's] determination." *Id.* § 62:46, at 62–130 to –131. According to this treatise, other claims of illegality more properly give rise to the need for additional testimony in district court:

> Where an issue is raised by the petition and answer as to whether the determination was made in violation of lawful procedure, or was arbitrary and an abuse of discretion, the court should take evidence with respect to the matters thus put in issue, and apply the law thereto. Since such matters would not ordinarily appear in the return and record of the respondent in the proceedings, such authority will be utilized when questions of fact are presented which cannot be summarily decided in the review proceeding on the basis of allegations in the petition, although sworn to, or in affidavits, or on the exhibits and other types of informal evidence which a board of appeals is accustomed to consider.
>
> . . . .
>
> Where the person appealing from the action of the administrative body sets forth in his petition sufficient facts to persuade the court that there were "in fact or in all likelihood, factors present, not of record which influenced the action of the council complained of," . . . the court should conduct a hearing and consider evidence not of record before the administrative body since the court could not properly have determined the question from the transcript of the proceedings at the public hearing.

*Id.* at 62–123 to –124, 62–128.

Thus, with respect to the district court's proper role in taking additional evidence, this authority distinguishes between illegalities that appear in the record made before the board, e.g., insufficiency of the evidence to support the board's findings, and illegalities that are outside the record, e.g., a board member's conflict of interest. Only when the illegality does *not* appear in the record made before the board should the district

court take additional evidence. In addition, this authority would limit the court's fact-finding role to issues that were *not* before the board.

Although the standard act discussed in *Rathkopf* admittedly does not contain the "tried de novo" language appearing in Iowa's statute, courts from other states interpreting statutory language similar to Iowa's have interpreted their statutes consistently with *Rathkopf's* analysis. *See Colorado Land Use Comm'n v. Bd. of County Comm'rs*, 604 P.2d 32 (Colo. 1979); *People ex rel. St. Albans-Springfield Corp. v. Connell*, 177 N.E. 313 (N.Y. 1931); *Bd. of Zoning Appeals v. Combs*, 106 S.E.2d 755, 758–59 (Va. 1959) (relying on Iowa *Anderson* case). In *Colorado Land Use Commission,* the Colorado Supreme Court defined the phrase "trial de novo" as used in a statute describing review of decisions of the board to mean something less than "trial anew on the merits": "The de novo term is included to indicate that any relevant evidence may be introduced to attempt to prove illegality such as fraud, sham, bribery, failure to comply with statutory requirements, or abuse of legislative discretion." 604 P.2d at 36. Since the appellant in that case had sought a de novo review of the merits of the board's determination, the Colorado court held the trial court had properly dismissed the appellant's complaint. *Id.* Similarly, in *St. Albans-Springfield*, the highest court in New York observed that a court having a power of review similar to that provided in chapter 414 "is not supposed to exercise it as though it were the board of standards and appeals. . . . The courts must not trespass upon this administrative work, but confine their review to correcting legal errors." 177 N.E. at 315.

Although these decisions and *Rathkopf's* discussion of the district court's role in reviewing a board decision are contrary to our holding in *Weldon,* we think the analysis of these authorities makes sense and is entirely consistent with our statutory language. Section 414.18 allows the

court to take evidence "[i]f . . . it shall appear to the court that testimony *is necessary* for the proper disposition of the matter." (Emphasis added.) Ordinarily, testimony would not be necessary when the claimed illegality is insufficient evidence, at least when a record was made before the board. Our proposed interpretation of the statute also reflects our traditional deference to the fact-finding role of the local tribunal with respect to the issues of fact essential to its decision by preserving the substantial-evidence rule in the review of board decisions. We think it is simply inconsistent to define an illegality as a lack of substantial evidence to support the board's decision, a rule used to review an inferior tribunal's *fact-finding*, but then place the ultimate fact-finding responsibility on the district court. In other words, a substantial-evidence review makes more sense if the fact-finding relevant to the issues before the board remains with the board.

We also think application of the substantial-evidence rule is more consistent with the principle stated in *Weldon* and other Iowa cases that the court should not substitute its judgment for that of the board. *See, e.g., Helmke v. Bd. of Adjustment*, 418 N.W.2d 346, 352 (Iowa 1988); *Weldon*, 250 N.W.2d at 401; *Anderson*, 206 Iowa at 463, 221 N.W. at 359. The existence of a particular fact is often outcome determinative, as in the present case. To allow the district court to make this crucial finding of fact necessarily allows the court to substitute its judgment for that of the board.

Importantly, interpreting section 414.18 consistently with *Rathkopf's* explanation of the standard act does not render the Iowa statute's reference to "the hearing which shall be tried de novo" superfluous because, for illegalities that are not based on the board's fact-finding function, the district court does find the facts pertinent to the claimed illegality. Finally, we think the *Rathkopf* interpretation is more understandable, more easily and consistently applied by the district courts, and more consistent with

the certiorari mode of review adopted by the legislature for review of board decisions.

In summary, we overrule *Weldon* to the extent it permitted the court to make new factual findings on issues that were before the board for decision. Such fact-findings will be reviewed under the substantial-evidence test traditionally employed in certiorari reviews.

## VI. Substantial Evidence to Support Board's Finding That Property Values Would Not be Substantially Diminished or Impaired.

As noted above, the board could not grant a special exception to Shelter House unless it was satisfied "[t]he specific proposed exception . . . will not substantially diminish or impair property values in the neighborhood." Iowa City Code § 14–6W–2(B)(2)(b). We must determine whether there was substantial evidence to support the board's finding that this standard was met. "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'" *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995) (quoting *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987)).

In concluding Shelter House "failed to present substantial evidence that the proposed Special Exception will not substantially diminish or impair property values in the neighborhood," the district court observed

> there was no testimony or comment at the public hearing from any real estate assessor, real estate appraiser, realtor or owner of property near the current Shelter House concerning this issue, with the exception of a property manager who commented on the already existing problem of renting out property [in the vicinity of the new location].

The district court also gave little credence to the testimony of an urban planner, who referred to national research that property values located in areas of transient housing do not necessarily go down, because the speaker

did not provide any documentation of the research or its source. The court concluded the minutes of the board meeting, the transcript of that meeting, and the board's written decision did not collectively contain substantial evidence to support the board's finding that property values would not be impaired or substantially diminished.

While the issue is close, we conclude there was substantial evidence to support the board's decision. As the district court accurately observed, there was no expert testimony that property values would not be impaired by the location of the transient home. Nonetheless, the absence of such evidence is not fatal, as expert testimony concerning the valuation of property is not required by our cases or by the Iowa City Code. *Cf. Petersen v. Harrison County Bd. of Supervisors*, 580 N.W.2d 790, 796 (Iowa 1998) (noting no requirement under chapter 352, dealing with designation of property as an agricultural area, that expert testimony concerning reduced property values be presented at hearing before the board). *See generally Norland v. Worth County Comp. Bd.*, 323 N.W.2d 251, 253 (Iowa 1982) (noting determination of a prevailing wage is not an exact science, and there was no statutory constraint on the type of evidence the board could consider).

One person residing in the vicinity of the current transient house commented that the property values in that neighborhood had not been adversely affected. The board was certainly permitted to rely on such anecdotal evidence. *See Cambodian Buddhist Soc'y v. Planning & Zoning Comm'n,* ___ A.2d ___, ___ (Conn. 2008) (noting "commission was entitled to credit the anecdotal reports that past activities on the society's property had made neighboring properties less desirable" in determining whether proposed construction of temple would impair property values). In addition, the board may rely on commonsense inferences drawn from evidence

relating to other issues, such as use and enjoyment, crime, safety, welfare, and aesthetics, to make a judgment as to whether the proposed use would substantially diminish or impair property values in the area. *See Miller v. Hill*, 785 N.E.2d 532, 539 (Ill. App. Ct. 2003) (concluding testimony of neighbors of firing range that noise did not bother them and they were not concerned about safety was adequate proof that proposed firing range would not adversely affect property values); *Ballas v. Town of Weaverville*, 465 S.E.2d 324, 326–27 (N.C. Ct. App. 1996) (holding testimony that "bed and breakfast would be an 'attribute to the community' supports an inference that it would not impair property values in the neighborhood"). We examine, then, evidence before the board that would permit an inference with respect to property values.

The concern most often voiced by opponents of the special exception was the increased likelihood of criminal acts in the neighborhood. Several witnesses reviewed the statistics concerning the arrest rates for residents of the current shelter house and for residents of Hilltop Mobile Home Court, a mobile home development in the neighborhood of the new location. Although the witnesses differed in their interpretation of this data, a close inspection of these figures reveals that the arrest rate for persons giving Shelter House as their address was likely less than the arrest rate for persons giving Hilltop Mobile Home Court as their address. Moreover, there appeared to be more concern about potential crime due to the number of persons turned away by Shelter House than by the persons who actually stay there. There was testimony that the proposed doubling of capacity at the new facility may offset this negative impact by significantly reducing the number of persons turned away for lack of room. There was also a statement from a neighbor of the current shelter house that he did not observe any "rise or change in the amount of crime in the neighborhood."

In addition to the evidence regarding crime, there was testimony from two persons residing in the neighborhood of the current shelter house that the establishment caused no problems in the neighborhood other than some detrimental aesthetics relating to trash cans and the lawn. These issues were to be addressed at the new transient house through a requirement that the new location have a landscape buffer and an eight-foot privacy fence. Another neighbor at the current location denied there was any increase in vehicular traffic due to the presence of the transient house. There was also evidence that it was already difficult to rent property at any price in the area of the new location, supporting an inference that transient housing would not have much of an effect on the already depressed property values. Finally, notwithstanding a lack of documentation, the board could consider the testimony of the urban planner that national research showed property values do not necessarily go down when such a use is introduced into a neighborhood.

We think this evidence, considered collectively, is adequate to support the board's conclusion that the proposed special exception would not substantially diminish or impair the value of neighboring properties. Although there was evidence to the contrary, the reasonableness of the board's decision is open to a fair difference of opinion, and therefore, the board's decision should have been affirmed on that basis. *See Helmke*, 418 N.W.2d at 352 (stating "whether the evidence in a close case such as this one might well support an opposite finding is of no consequence, for the district court cannot substitute its judgment for that of the board of adjustment").

**VII. Disposition.**

We conclude the board made adequate findings, and its decision was supported by substantial evidence. Accordingly, the district court erred in

reversing the board's grant of Shelter House's application for a special exception. We therefore reverse the district court's judgment and remand this case back to the district court for entry of an order affirming the decision of the board of adjustment.

**REVERSED AND REMANDED.**