# IN THE COURT OF APPEALS OF IOWA

No. 14-0781
Filed March 25, 2015

**JOHNA LEDDY, MALCOLM YEH, MAUREEN BROOKHART, STEVE CONNELL, JR., JOSEPH LAWTON and LORI LAWTON,**
    Plaintiffs-Appellants,

**vs.**

**BOARD OF ADJUSTMENT, THE CITY OF IOWA CITY, IOWA,**
    Defendant-Appellee,

**and**

**BETH BEWLEY-RANDALL and TOM RANDALL,**
    Intervenors.
_____

Appeal from the Iowa District Court for Johnson County, Nancy A. Baumgartner, Judge.

Residential landowners filed a petition for writ of certiorari challenging the grant of a special exception by the Iowa City Board of Adjustment; the district court annulled the writ. **AFFIRMED.**

C. Joseph Holland and Karyn R. Moore of Holland Law Office, P.L.C., Iowa City, for appellants.

Sara Greenwood Hektoen and Sarah Holecek, Assistant City Attorneys, for appellee.

Adam S. Tarr of Pugh Hagan, P.L.C., Coralville, for intervenors.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

In 1933, a DeSoto dealer operated out of an 8000-square-foot warehouse at 1018 Walnut Street in Iowa City. That property is the subject of this zoning appeal. The warehouse is located in an area currently zoned for medium density single family residences. The Iowa City Board of Adjustment granted a special exception to allow Beth Bewley-Randall and Tom Randall to operate their electrical business from the warehouse.

A group of neighbors (Johna Leddy, Malcolm Yeh, Maureen Brookhart, Steve Connell Jr., Joseph Lawton, and Lori Lawton) filed a petition for certiorari in the district court to challenge the board's decision. The district court annulled the writ and rejected the neighbors' challenge. On appeal, the neighbors assert the court erred in determining: (1) an *existing legal* nonconforming use is not required and thus the board acted legally; (2) the board made an appropriate comparison between the intensity of the prior and proposed nonconforming uses; (3) the board's findings on the "general criteria" elements were supported by substantial evidence; and (4) the board did not consider improper criteria. Finally, the neighbors claim the district court abused its discretion in denying their motion to strike exhibits attached to the city's trial brief.

We conclude the district court did not err in rejecting the neighbors' strained interpretation of the Iowa City Code and ruling the board acted legally. We agree the board made the appropriate intensity comparison and also find no error in the district court's substantial evidence ruling. Nothing in either the board's oral findings or its written decision leads to a conclusion the board relied

upon an improper consideration. The district court did not abuse its discretion in denying the neighbors' motion to strike. Accordingly, we affirm.

## I. Background Facts and Proceedings

In late 2010 the Randalls purchased the vacant warehouse on Walnut Street. After its use as an automotive dealership in the 1930s, the property had been a site for the restoration and repair of cars, for artist studios, and for noncommercial storage. The Randalls planned to use the property as an office and storage location for their electrical business. In May 2012 the Randalls applied to the board for a special exception to convert the property's nonconforming automotive use to a nonconforming building trade use.[1]

After providing public notice, the board scheduled a meeting for June 13, 2012, to discuss the Randalls' application for a special exception. Before the board meeting, the Randalls invited interested residents to a "good neighbor's meeting" at their property to go over their site plans. In addition, the city's planning staff contacted all property owners within 300 feet of the warehouse to inform them of the board meeting. The planning staff received both positive and negative feedback on the Randalls' application.

On the positive side, Ruth Hesseltine sent an email to the city planning staff in support of the Randalls' application. Her husband, Joe Hesseltine, owned and operated the business, JH Mechanics, at 1018 Walnut Street for twenty-two

---

[1] Under the Iowa City zoning code, building trade uses are described as "specialized trade contractors" who "for the most part perform their work at the site of the construction, although they also may have shops where they perform work incidental to the job site." Examples include electrical, plumbing, heating, and air conditioning contractors.

years. She discussed her connections to the neighborhood dating back to 1964 and endorsed the Randalls' plans: "It is very exciting for me to know they will work hard to benefit everyone's enjoyment of a historic building."

On the negative side, Iowa City resident Maureen Brookhart sent an email to Iowa City Associate Planner Sarah Walz. Brookhart explained that her family purchased a residence on nearby Summit Street in 2000.

> When we purchased our property the Walnut Street property appeared to be utilized as personal storage by the owner as well as rental of a few studio spaces above the structure. We bought into the neighborhood with that in mind. The traffic and noise from the structure was not an issue. Approving this exception will increase the intensity of use from what we have experienced since purchasing our home.

Brookhart acknowledged, "Cosmetically the structure will be improved with the plans the Randalls have proposed." But she continued, "As a neighbor who lives in close proximity I am more concerned with the day-to-day traffic, noise, and safety if the exception is approved." Another neighbor, Johna Leddy, sent an email expressing her opposition and also appeared at the board meeting to voice her concerns about safety, parking, and traffic related to the building trade use.

The city's planning staff recommended the board approve the Randalls' request for a special exception, but it also recommended the board impose numerous conditions to address parking, hours of operation, indoor storage, lighting, and other aesthetics. After a thorough discussion, the four-member board unanimously approved the special exception, along with the ameliorating conditions proposed by the planning staff and additional conditions.

A group of six neighbors filed a petition for writ of certiorari in the district court challenging the board's decision. The Randalls were granted leave to intervene. The district court held a hearing on the matter and issued a detailed ruling denying the neighbors' petition and annulling the writ of certiorari. The neighbors appeal from that ruling.

## II. Scope and Standards of Review

Zoning decisions are "an exercise of the police powers delegated by the State to municipalities." *Shriver v. City of Okoboji*, 567 N.W.2d 397, 400 (Iowa 1997). A person aggrieved by the decision of a city board of adjustment may seek review in the district court by a petition for certiorari identifying the claimed illegality of the board's action. Iowa Code § 414.15 (2011). A board "commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious." *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011).

We review the district court's decision for correction of legal error. *Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 495 (Iowa 2008). We are bound by the board of adjustment's fact findings if they are supported by substantial evidence. *Id.* "Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Bush v. Bd. of Trs.*, 522 N.W.2d 864, 866 (Iowa Ct. App. 1994). A board is permitted to rely on anecdotal evidence. *Bontrager*, 748 N.W.2d at 496. "In addition, the board may rely on commonsense inferences drawn from evidence relating to other issues . . . to

make a judgment as to whether the proposed use would substantially diminish or impair property values." *Id.*

The decision reached by a board of adjustment enjoys a strong presumption of validity. *Ackman v. Bd. of Adjustment*, 596 N.W.2d 96, 106 (Iowa 1999). Where "the reasonableness of the board's action is 'open to a fair difference of opinion, the court may not substitute its decision for that of the board.'" *Id.* (citation omitted). Thus, our role as a reviewing court does not include exercising the board's underlying discretion ourselves. *See id.*

We review the challenge to the exhibits for an abuse of discretion. *See Mohammed v. Otoadese*, 738 N.W.2d 628, 631 (Iowa 2007). An abuse of discretion occurs where the district court exercised discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

**III. Iowa City Code—Zoning Ordinances**

The Iowa City Comprehensive Plan encourages the re-use of existing buildings so long as their use does not interfere with the function and character of the neighborhood in which they are located. The purpose of Iowa City Code title 14, article E "is to regulate nonconforming situations." *See* Iowa City Code § 14-4E-1. The "intent" of the "regulations is not to force all nonconforming situations to be immediately brought into conformance." *Id.* Instead, the intent is threefold: (1) "to guide future uses and development in a direction consistent with city policy"; (2) "to protect the character of an area by reducing the potential negative impacts from nonconforming situations"; and (3) "over time, to bring the development into compliance with the city's regulations." *Id.* A "nonconforming

use," one type of nonconforming situation, is defined as "a use that, when established, was a permitted use, was allowed as a provisional use, or was approved as a special exception, but which subsequently . . . is no longer allowed." *Id.* § 14-4E-2(A).

"Nonconforming uses" are regulated in Iowa City Code section 14-4E-5. The parties disagree on the interpretation and interplay of Iowa City Code sections 14-4E-5(B) and 14-4E-5(F). "Change of Use," found in Iowa City Code section 14-4E-5(B), in relevant part states:

> 2. The board . . . may grant a special exception to allow a nonconforming use, which is located in a structure not designed for a use allowed in the zone, to be converted to a nonconforming use in a different use category . . . that is the same or lesser intensity than the existing [legal] use, provided the following conditions are met:
>
> . . . .
>
> b. The proposed use is of the same or lesser level of intensity and impact than the existing [legal] use. The board of adjustment will make a determination regarding the relative intensity of the proposed use by weighing the [applicant's evidence] with regard to such factors as anticipated traffic generation, parking demand, hours of operation, . . . noise, dust, and customer . . . activity. The board of adjustment may also consider qualitative factors such as whether a proposed use will serve an identified need in the surrounding neighborhood.

Before the district court and on appeal, the neighbors insert the word "legal" into subsection 5(B)(2) (as shown by [legal] above).

Iowa City Code section 14-4E-5(F), "Discontinuance of Nonconforming Use," was amended in 2005 to include the following italicized language and states: "[A] nonconforming use that is discontinued for a period of one year must

revert to a conforming use *or, in qualifying situations, a special exception may be applied for according to the provisions of subsection B of this section.*[2]

## IV. Analysis of Neighbors' Challenges

### A. Did the district court err in ruling an existing legal nonconforming use was not required under 14-4E-5(F)?

The district court ruled:

> [The neighbors'] first argument is that the board's decision is illegal because there was no existing legal nonconforming use for the property as required by ordinance 14-4E-5(B). The court concludes it is very relevant that the city council, in amending ordinance 14-4E-5(F), clearly chose to permit a special exception to be granted for a nonconforming use, even if the prior nonconforming use has been discontinued for one year. The council's decision to amend the previous ordinance (14-6T-3(D)), which did not include the "qualifying situations" language present in the current version of 14-4E-5(F), shows that the city intended to consider allowance of a special exception in cases where a nonconforming use has been discontinued for a period of one year, when the property has not reverted to a conforming use.

On appeal, the neighbors contend the plain language of the code does not permit a special exception under subsection 5(B) in situations where the nonconforming use to be changed is not ongoing and active ("existing") at the time of the proposed change.[3]  *See* Iowa City Code § 14-4E-5(B)(2).  Noting all parties agree the only legal nonconforming use (the original automobile dealership) was discontinued "well over one year before the Randalls sought a special exception," the neighbors assert the property "then had reverted" to "uses

---

[2] The pre-amendment section stated: "**Discontinuance of Nonconforming Use:** A lot or portion of a lot devoted to a nonconforming use [that] is discontinued for a period of one year shall revert to a conforming use."  *See* Iowa City Code § 14-16T-3(D) (2005).

[3] Citing to a dictionary, the neighbors state the term "existing" means "in being," so "there must be a nonconforming use *in being* at the time the special exemption is considered by the board."  They assert that otherwise, the word "existing" is "rendered superfluous."

legally permitted under the RS-8 zone" years before the hearing "and could not revert back to another nonconforming use." Because this prerequisite—existing legal nonconforming use—is not present,[4] the neighbors assert the district court "ignored recognized rules of statutory construction." The neighbors further claim subsection 5(F) "does not negate the requirement of an existing legal nonconforming use" because that section

> simply allows for a nonconforming use that has been converted, pursuant to section 14-4E-5(B), to a different nonconforming use, to be converted back to the original nonconforming use even after a year has passed, so long as the intermediate nonconforming use has not been discontinued for the period of one year and the other criteria of [subsection 5(B)] are met.

We note neither subsection 5(B) nor subsection 5(F) refers to *intermediate* nonconforming uses. Finally, the neighbors assert subsection 5(F)'s phrase, "qualifying situations," is defined in its first clause and means "situations where the property has *not* reverted back to a conforming use, i.e., where a nonconforming use has *not* been discontinued for a year." During oral argument, the neighbors' counsel asserted the phrase "qualifying situations" refers to the "circumstances of traffic and noise."

---

[4] The neighbors point to (1) Leddy's hearing statement that there had not been any business/activity on the property for at least ten years; (2) the Randalls' trial brief, stating, "other than the automobile dealership use, there was never another legally authorized use, such as a conforming, permitted or provisional use, or a new nonconforming use;" and (3) Walz's acknowledgment at the hearing that the original nonconforming use had expired:

> [T]he rights to the previous repair use are gone, because that has been gone for so long, and that was part of what the Staff was confounded by . . . when we talked about going to the lesser intensity, it's a lesser use than the previous use, but we don't have a use to refer to, because the previous known use, the repair, has been gone for so long . . . [i]t doesn't have the rights to that anymore.

We are not persuaded. Nothing in subsection 5(F) limits the board's alternatives to an "intermediate nonconforming use" that itself "has not been discontinued for the period of one year." *See id.* § 14-4E-5(F). The neighbors' strained interpretation renders the last phrase of subsection 5(F) either a nullity or incomprehensible and thus violates our rules of statutory interpretation. *See Miller v. Marshall Cnty.*, 641 N.W.2d 742, 749 (2002) (stating courts "must read each provision of a statute together" and give effect to each term "so that no single part is rendered insignificant or superfluous"). The plain language of subsection 5(F), as found by the district court, expressly authorizes the board to issue a special exception a year or more after the discontinuance of a prior nonconforming use. *See* Iowa City Code § 14-4E-5(F). This is consistent with the Iowa City Comprehensive Plan's encouragement of the re-use of existing buildings. Thus, under subsection 5(F), the board was authorized to consider the Randalls' application for a special exception seeking to change a nonconforming use to their proposed nonconforming use even though the previous nonconforming use was not continuous and ongoing. *See id.*

Further, the isolated references to "existing uses" in subsection 5(B)—a general code section—cannot render meaningless the entire specific provision in subsection 5(F) that expressly authorizes a board to consider an application to change to a different nonconforming use in situations where the prior nonconforming use has been discontinued one year or longer—the exact situation the board faced here. *See* Iowa Code § 4.7 ("If a general provision conflicts with a special . . . provision, they shall be construed, if possible so that

effect is given to both. If the conflict . . . is irreconcilable, the special . . . provision prevails as an exception to the general provision."). The reference in subsection 5(F) to subsection 5(B) is a reference to the general procedure the board should use to analyze the specifically authorized 5(F) special exception. *See* Iowa City Code § 14-4E-5(B), 5(F). Accordingly, the district court did not err in ruling the board acted legally.

**B. Did the district court err in ruling the board properly compared the intensity and impact of the new nonconforming use to the previous legal use as an automobile dealership?**

Alternatively, the neighbors contend if the lapsed automobile dealership use is the appropriate "existing" use for the intensity comparison, the board failed to make that comparison. In support, they point to the board's discussion at the hearing and claim the board focused on the actual uses of the property over the years and not the lapsed dealership use.

Rather than drawing conclusions from the discussion, we first turn to board member Brock Grenis's oral statements setting out the board's findings: "Given that we were not quite sure of the previous use and there is some ambiguity, but I believe . . . the use being proposed will be of the same or lesser intensity than previous uses." Because "previous uses" would include the automobile dealership use, the board did, in fact, make the comparison. Next, we examine the board's written ruling:

> [5(B)(2)(b) Standard] The proposed use is of the same or lesser level of intensity than the existing use, considering the relative factors such as traffic generation, parking demand, hours of operation, residential occupancy, noise, dust and customer and/or resident activity.

The Board concludes the proposed use is of the same or lesser intensity than the existing use based on the following findings:

- The subject building was originally constructed as an automotive showroom and is not designed for, or readily adaptable to, a use currently allowed in the zone.
- Though the property may have had less intensive uses in recent years, it does not have a clear history of legal use.
- Due to the size of the building and its structure, which is warehouse-like, it is inviting to a number of uses that could create a disturbance or detract from the residential neighborhood—i.e., uses that could generate noise, dust, customer traffic, or parking demand, etc.
- With the special exception, the property would be limited to a building trade use only and no other uses would be permitted on the site.
- The proposed use would not generate customer traffic.
- Conditions imposed by the Board are intended not only to limit the intensity of the proposed use but also to limit the opportunity for significant growth of the business on the site by controlling the hours and days of operation; limiting signage, lighting, outdoor storage, parking of vehicles (both fleet and personal staff vehicles); prohibiting outdoor assembly or other activities on the site; and reducing driveway widths and parking.

Under the statutory scheme, the purpose of Iowa Code section 14-4E-5(B) is to regulate the *change* of one *nonconforming* use to another *nonconforming* use. In the absence of an ongoing nonconforming use to compare to, the district court found the "only clear evidence of a prior nonconforming use that was legally authorized by the city is the use of the property, as originally constructed, for an automobile dealership." All parties agree that after the dealership closed, the property was never used in a manner officially sanctioned by the city.

Here, the neighbors selectively cite to the second bullet point ("the property does not have a clear history of legal use") in support of their argument and omit the board's first point specifically recognizing the automotive dealership as a prior nonconforming use. When we combine the first bullet point in the board's written ruling with the board member's oral findings, we find no error.

**C. Did the district court err in concluding substantial evidence supported the board's findings on the "general approval criteria"?**

Every special exception must meet the general criteria set out in both Iowa City Code section 14-4B3A(1) (stating the "proposed exception will not be detrimental to or endanger the public health, safety, comfort, or general welfare") and Iowa City Code section 14-4B3A(2) (stating the "proposed exception will not be injurious to the use and enjoyment of other property in the immediate vicinity and will not substantially diminish or impair property values in the neighborhood"). The neighbors point to letters to the board written by Johna Leddy and Maureen Brookhart detailing their concerns about health, safety, environment, comfort, use, and property values along with Leddy's testimony at the hearing voicing apprehension the special exception for the Randalls' business would introduce problems with parking and traffic, including semitrailers. The neighbors claim the board gave "short shrift" to the general criteria and thus the court erred in determining substantial evidence supported the board's findings.

As above, the neighbors selectively cite to the record, omitting reference to countervailing letters supporting the special exception, the evidence the board received from the Randalls regarding the specifics of their proposed business,

and the conditions imposed by the board. Based on all the evidence, member Grenis issued oral findings that were adopted in the board's written findings. Grenis found the first general standard "satisfied given the restrictions" the board placed on the approval, including limiting "driveway access to the site," the buffer plan "creating separation between the vehicle parking and the adjacent right of way," the additional "screening standards," and "keeping the staff vehicles off the public streets."

Grenis also found the second general standard satisfied, given the board's conditions, while also recognizing "building trade uses have certain aspects that may be injurious to the use and enjoyment [of] other properties in the neighborhood, including vehicle parking and use of outdoor areas." The board's conditions included the following:

- The special exception was for building trade use only; no other permitted uses were allowed on the site.
- The parking area should be set back and screened.
- Hours of operation are limited to 6 a.m. to 6 p.m. weekdays.
- Fleet vehicles should be stored inside the building.
- Outdoor storage of equipment, materials, and dumpsters is not allowed.
- Assembly repair, and construction associated with the use must be conducted indoors.
- Signage should be limited to fascia or awning signs in compliance with the zoning code standard for non-residential usage located in residential zones.
- Outdoor lighting should comply with the zoning code standards for residential zones.
- The structure shall be painted and maintained with a front façade in a manner that does not detract from the residential character of the zone.
- The parking area [currently a partial pavement/partial gravel mix] will be paved with a hard surface according to parking area standards.

In our view, the board did not give the general criteria "short shrift."

In addition to the restrictions and affirmative conditions attached to the special exception by the board to address the neighbors' concerns, the Randalls offered evidence of their recycling practices to refute the neighbors' complaints regarding environmental contamination. The Randalls also stated their business operations would take place inside the building. Assessing the whole record, the district court found substantial evidence to support the board's finding the Randalls' proposed nonconforming use complied with the general criteria. We agree. *See Bontrager*, 748 N.W.2d at 495 (stating "the court should not substitute its judgment for that of the board").

### D. Did the board consider improper factors?

The neighbors claim a fair reading of the board members' discussion shows the members were "clearly motivated to grant the special exception in large part because of their concern about the Randalls' ability to use the property if [it] denied the application." Alleging that consideration was "outside the criteria" in the city code, the neighbors contend the board considered improper factors and acted illegally.

To analyze this issue, we set out some of the relevant comments from the June 2012 meeting. Member Larry Baker asked: "I'm just trying to figure out what happens to this business if we deny this application." City planner Walz replied that the question was "not specific" to the special exception. She explained the board's "concern is really with the use that is being proposed, as if it were not there," and "those are the findings that you have to make." After this

exchange, member Baker indicated he understood the question before the board involved appropriate land use.

Nothing in the board's oral findings or written decision leads us to conclude the district court erred in ruling the board did not rely on improper criteria.

**E.    Did the district court abuse its discretion in denying the neighbors' motion to strike?**

As their final assignment of error, the neighbors contend we should reverse the district court's denial of their motion to strike.  At issue are two exhibits offered by the board: Exhibit A, an earlier version of nonconforming use provisions from the Iowa City Code; and Exhibit B, an affidavit from Jann Ream, a code enforcement assistant with the Iowa City Department of Housing and Inspection.

The neighbors assert the board violated their joint stipulation by attaching the exhibits to its trial brief.  They challenge the court's reliance on Iowa Rule of Civil Procedure 1.1410 to admit this evidence and also argue the court's acceptance of the exhibits violated the applicable standard of review for this type of case.  The neighbors claim they were prejudiced because the district court "relied heavily upon the change made to the nonconforming use provisions of the City Code" in its analysis.

Contrary to the neighbors' argument, the court's refusal to strike the exhibits did not contravene the applicable standard of review.  In *Bontrager*, 748 N.W.2d at 493-94, the court discussed the de novo trial conducted by a district court and ruled the court is permitted to accept additional evidence "if the court

finds that course necessary for proper disposition of the cause." In this case, the district court was permitted to consider the exhibits in response to the neighbors' claim the board acted illegally in failing to properly follow the city code. *See id.* at 494 (stating the term "de novo" means "any relevant evidence may be introduced to attempt to prove illegality such as" the board's "failure to comply with statutory requirements"). We conclude the court's denial of the motion to strike was not an abuse of discretion and did not unfairly prejudice the neighbors.

## V. Conclusion

Our role as a reviewing court on certiorari is not to exercise the agency's underlying discretion ourselves, but to resolve the neighbors' legal claims as raised in their writ of certiorari. For the reasons stated above, we agree with the district court's disposition of the neighbors' claims and affirm its judgment.

**AFFIRMED.**