# IN THE COURT OF APPEALS OF IOWA

No. 16-1753
Filed November 8, 2017

**CRAIG F. GRAZIANO,**
Plaintiff-Appellant,

**vs.**

**BOARD OF ADJUSTMENT OF THE CITY OF DES MOINES,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A home owner challenges the issuance of a front yard setback exception to a neighboring property owner. **AFFIRMED.**

Craig F. Graziano, Des Moines, appellant.

Michelle R. Mackel-Wiederanders, Assistant City Attorney, Des Moines, for appellee.

Heard by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Houses on 44th Street between Ingersoll and Grand Avenues in Des Moines must be set back at least fifty feet from the street. Property owner Cecelia Kent asked the Des Moines Zoning Board of Adjustment to make an exception, allowing her to build a house with a front yard setback of just thirty feet. The board agreed, and the district court upheld the board's decision. Neighbor Craig Graziano challenges that decision.

Graziano challenges the legality of the board's action, contending (1) the board failed to make required written findings and (2) substantial evidence does not support the grant of an exception. *See* Des Moines, Iowa, Municipal Code § 134-64. First, he alleges Kent did not show practical difficulties with building a house on the lot could not be overcome by "any feasible alternative means" other than an exception. Second, he contends the exception was not "in harmony with the essential character of the neighborhood." Third, he argues the board did not address concerns the exception would "diminish or impair property values in the surrounding areas." Graziano also attacks the board's action on constitutional grounds, asserting its procedures did not afford interested parties reasonable notice of the proceedings or a meaningful opportunity to be heard. Lastly, Graziano argues the district court abused its discretion when it denied his request for a stay of the board's decision without addressing the merits of his case.

At oral argument, counsel for the city acknowledged the board's actions were far from a "textbook" example of proper fact finding in the realm of zoning decisions. But the city urges us to find the board substantially complied with the

ordinance and the exception was adequately supported by evidence presented and discussed at the board meeting.

We recognize boards of adjustment, and like tribunals, are by their nature informal, and we do not review their decisions with "technical strictness." *See Thorson v. Bd. of Supervisors*, 90 N.W.2d 730, 735 (Iowa 1958). But our deference is not limitless. While we find sufficient evidence in this record to support the board's action, it is a close call. We strongly encourage zoning boards to undertake a more thorough examination of ordinance requirements in future proceedings.

We do not reach the merits of Graziano's other arguments. Graziano waived error on his constitutional claim, and his appeal of the district court's denial of his stay request is moot.

## I.      Facts and Prior Proceedings

At issue is a previously undeveloped lot located near the corner of Grand Avenue and a stretch of 44th Street colloquially referred to as "Snake Drive." Grand Oaks Condominiums owned the lot, as well as adjacent property featuring two condominium buildings, which face Grand Avenue, and a rear parking area. Cecilia Kent contracted to purchase the property from Grand Oaks with the intent to build a single-family home facing 44th Street.

But a thirty-foot easement for a public storm sewer running diagonally across the back of the undeveloped lot complicated Kent's plans. On November 14, 2015, Kent appealed to the board for an exception to the district's fifty-foot

front yard setback requirement.[1]  She alleged the exception was necessary to accommodate the construction of her new home—with an anticipated footprint of sixty-five feet by forty feet—in a location that would not encroach on the easement.  In addition to the front yard setback exception, Kent asked the board for two other measures: (1) a variance[2] of ten feet less than the minimum ten-foot paving setback required for a parking lot and (2) an exception of five feet less than the minimum ten-foot side yard setback required for a single-family dwelling.

---

[1] The fifty-foot setback is required under Des Moines, Iowa, Municipal Code section 134-1276(e), which provides, in relevant part:

> Front yard.  In any R district, there shall be a minimum front yard required as stated in the yard requirements for that particular district.  However, where lots comprising [thirty] percent or more of the frontage within 200 feet of either side lot line, excluding frontage zoned other than residential, are developed with buildings at a greater or lesser setback, the front yard requirement shall be the average of these building setbacks and the minimum front yard required for the undeveloped lots.  In computing the average setback, buildings located on reverse corner lots or entirely on the rear half of lots shall not be counted.  The required front yard as computed in this subsection need not exceed [fifty] feet in any case.

[2] Obtaining a variance under the Des Moines zoning ordinances requires a greater showing by an applicant than does obtaining an exception.  *See generally* Des Moines, Iowa, Municipal Code § 134-64(2) (giving the board power to grant a variance so long as it is not counter to the public interest "where owing to special conditions a literal enforcement of the regulations will result in unnecessary hardship" and "the plight of the owner is due to unique circumstances not of the owner's own making").

Kent did not provide any proposed renderings of the home with her application but did provide the following sketch:[3]



PLAT OF SURVEY - PART OF LOTS 7 AND 8, BURKE-WOOD
INFLEXION SOLUTIONS

In an attachment to the application, Kent explained the location of the easement:

> The property is bisected on the diagonal by a utility storm drain that runs from the middle of the eastern property line to the southwest corner of the proposed lot. . . . A public utility easement of [fifteen feet] to either side of the storm drain necessitates that the proposed structure . . . will be limited in placement.

The board heard Kent's application on December 16, 2015. The hearing began with a city staff member's presentation of a written report, which

---

[3] The application form required submission of a site plan or sketch "[i]dentify[ing] location and dimensions of all existing and proposed buildings or facilities on the site" and "[p]rovid[ing] measurements from all property lines."

recommended granting Kent's request for an exception to the front yard setback requirement:

> Staff believes there are practical difficulties in providing the necessary front yard setback given the shallow depth of property available for single-family development. If the front setback were met, it would likely require relief of the rear yard setback. In this instance, there is also a good portion of the rear yard that is encumbered by the public storm sewer easement making it a challenge to shift the proposed building footprint further east to increase the front yard setback.

The city's report also addressed the serpentine nature of the street and the complexion of the neighborhood:

> 44th Street is a curvilinear street pattern between Grand Avenue and Ingersoll Avenue. The homes fronting 44th Street have varying front yard setbacks because the street is not straight north to south. The subject property is also the only parcel fronting 44th Street that does not extend as deep to the east. Staff believes reducing the front yard setback to [thirty] feet would remain in character with the surrounding neighborhood, so long as the home would be built with an architectural design that is compatible with surrounding residential properties.

As to the variance Kent sought, the city staff member opined Kent had not demonstrated the requisite level of hardship because "[t]he dividing of the property is clearly creating a situation of [her] own making . . . there is nothing preventing meeting the required setback" from the parking lot. Finally, because he believed meeting the side yard setback requirement "would still provide an ample building envelope to build a home with a footprint that would be compatible with the character of home on the surrounding properties," the staff member also recommended denial of Kent's request for a side yard setback exception.

The staff member elaborated on these recommendations at the hearing. He observed the neighborhood was characterized by both "deep front yard setbacks" and "large homes" and reasoned, because of the location of the easement, a home built on the lot at issue could not satisfy both characteristics. The staff member did not know the average setback of the houses in the neighborhood, but he estimated a range of 135 to 150 feet based on aerial photography.[4] He concluded granting an exception to the front yard setback requirement would not have an "undue impact" on the character of the neighborhood, particularly considering the curvature of the street.

Cecilia's son, Mike Kent, who also lived on 44th Street, spoke on her behalf at the hearing. He revised the anticipated footprint of the proposed house to seventy-three feet by fifty-six feet and explained that size would accommodate sixty-seven-year-old Cecilia's plan to have a master suite on the first floor. He maintained his mother had no knowledge of the easement at the time of purchase and estimated moving the sewer line would cost $20,000 to $30,000. He also emphasized the design of the home would "be in conformity with the look and the feel of the neighborhood as it currently sits," which he hoped would protect the neighborhood property values.

---

[4] The owner of the adjacent property to the north estimated his front yard setback at approximately seventy-five to one hundred feet. The side yard of one of the condominium structures abutted 44th Street on the adjacent property to the south. Due to the lesser requirements for side yards, its setback was only twenty-seven feet.

Graziano spoke in opposition to Kent's front yard setback request. He read from a letter submitted to the board before the hearing,[5] in which he described the neighborhood as having a "stately character," due to "the large front yard setbacks on this segment of this street." He believed granting a setback exception would detract from the neighborhood aesthetic and "diminish and impair established property values in the surrounding area." Graziano concluded: "It just seems to me they ought to be working harder to find a way to move [the home] back, and if they can't do that, then I don't think that's a proper justification for altering the character of the neighborhood."

Next, Bill Brown, who lived next to Cecilia Kent's property, spoke in opposition to her requests. He, too, expressed concern about property values. He believed that considering the significant setback of his own home, an adjacent home located just thirty feet from the street would look out of place.

In a brief response, Mike Kent disagreed with the objectors' concerns and reiterated his commitment to upholding the integrity of the neighborhood. He asserted the front yard setback exception would not be out of character with the neighborhood because two other houses "up on the corner [of 44th Street and Ingersoll] . . . also have very shallow setbacks because they also have very shallow yards just like this one."

---

[5] Other neighboring property owners also submitted written statements either supporting or opposing Cecilia's requests. Several residents of the Grand Oaks Condominiums and other properties located on Grand Avenue submitted comment cards in favor of the request. One Grand Oaks resident noted: "Our assoc. needs cash to maintain this old & costly set of condos." Four other individuals submitted comment cards in opposition, citing concerns with overcrowding, changing the character of the neighborhood, and reducing property values.

In a five-to-two vote, the board granted the front yard setback exception subject to conditions[6] and denied Kent's other requests. The board issued a written decision five days later, adopting nearly verbatim the rationale provided in the written report of the city staff member.

On December 26, 2015, Graziano filed a petition for writ of certiorari with the district court, challenging the board's findings and raising due-process concerns. *See* Iowa Code § 414.15 (2015). Just over a month later, on February 5, 2016, Graziano filed an "application for stay of the [b]oard's decision," under either Iowa Code section 414.16 (providing "[t]he allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board and on due cause shown, grant a restraining order") or Iowa Rule of Civil Procedure 1.1405 (allowing the court to "stay the original proceedings"). He alleged "[t]rucks have recently been observed at the site" and reasoned: "If a stay is not granted and construction is commenced, the proceedings may as a practical matter become moot and the petitioner deprived of the opportunity of judicial review."

The district court denied the motion for stay—noting it was unclear what showing was required to support the entry of a "restraining order" under section 414.16 or a "stay" under rule 1.1405. The court ultimately concluded "a restraining order is something akin to a temporary injunction" and denied the stay

---

[6] The conditions were as follows: (1) the dwelling "shall be constructed with a design and building materials . . . compatible with the established surrounding residential character to the satisfaction of the Planning Administrator," (2) the dwelling "shall be constructed in compliance with all applicable Building and Fire Codes with issuance of all necessary permits," and (3) "[a]ny subdivision of the property shall be subject to review and approval of a Plat of Survey by the City's Permit and Development Center."

on grounds Graziano had not demonstrated: (1) a likelihood of success on the merits, (2) irreparable harm if the stay was denied, or (3) the relative hardships resulting from the grant or denial of the stay weighed in his favor. But the court noted: "Intervenor Kent proceeds at her own risk in light of the pendency of petitioner's action."

On August 30, 2016, the district court affirmed the board's decision, finding substantial evidence supported the grant of the front yard setback exception and rejecting Graziano's constitutional claims. Graziano filed a motion under Iowa Rule of Civil Procedure 1.904(2) to enlarge or amend and renewed his request for a stay on September 11. The court denied both requests on October 17. Graziano filed a notice of appeal the next day,[7] along with another request for a stay, this time directed to the supreme court. The supreme court denied Graziano's stay request on January 17, 2017.

## II.    Jurisdiction

Graziano first addresses the timeliness of his appeal. In its denial of Graziano's rule 1.904(2) motion, the district court found he had "rehashed arguments previously made to and adequately addressed by the [c]ourt." At that time, an improper 1.904(2) motion, such as one "merely seek[ing] to rehash legal issues adversely decided," did not toll the deadline for appeal. *Homan v.*

---

[7] Graziano asked the supreme court to retain this case

because it appears that *Bontrager Auto Service, Inc. v. Iowa City [Board] of Adjustment*, 748 N.W.2d 483 (Iowa 2008), is being misread as giving a local zoning board of adjustment an uncontrolled discretion to make any decision on an application for variance or exception that appeals to the board's sense of justice, without regard to whether the applicant has demonstrated compliance with the requirements of the ordinance.

The supreme court transferred the case to us.

*Branstad*, 887 N.W.2d 153, 161 (Iowa 2016). Because Graziano filed his notice of appeal more than thirty days after the district court's decision affirming the board's action, if his 1.904(2) motion was improper, his appeal was untimely, depriving us of jurisdiction. *See id.* Graziano contends his motion was proper because it "was limited to issues raised in the briefing but *not* addressed in the district court's ruling." *See id.* ("Ordinarily, a proper rule 1.904(2) motion asks the district court to amend or enlarge either a ruling on a factual issue or a ruling on a legal issue raised in the context of an underlying factual issue based on the evidence in the record.").

Graziano's 1.904(2) motion tolled the appeal deadline.[8] Although Graziano did not explain the significance of the various complaints raised in his 1.904(2) motion, he did preface the filing with a "request [for] enlargement or amendment of findings and a modified or different judgment substituted." The district court found Graziano "raise[d] several additional facts in his request for enlargement." Like the district court, we broadly construe Graziano's motion as a request for the court to "examine facts [he] suspects the court overlooked" and to expand "the judgment in view of that evidence." Accordingly, it constituted a proper 1.904(2) motion. *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 641 (Iowa 2013).

---

[8] In a notice of additional authorities, Graziano cites amendments to Iowa Rule of Civil Procedure 1.904 and Iowa Rule of Appellate Procedure 6.101, which eliminated the propriety requirement beginning on March 1, 2017. *See* Iowa Sup. Ct., In re Adopting Amendments to Iowa R. Civ. P. 1.904 & Iowa R. App. P. 6.101 (Nov. 18, 2016). Graziano asks us to apply those amendments retroactively. But because we find Graziano's 1.904(2) motion was proper under the previous formulation of the rules, we find it unnecessary to consider this argument.

### III. Scope and Standard of Review

We review the district court's order affirming the board's decision for correction of legal error. *See Bontrager*, 748 N.W.2d at 494–95. Our role is not to exercise the board's underlying discretion but, rather, to resolve the legal claims as raised in the petition for writ of certiorari. *See Doss v. Zoning Bd. of Adjustment*, No. 16-0916, 2017 WL 702373, at *2 (Iowa Ct. App. Feb. 22, 2017).

The board's decision enjoys a presumption of validity. *Ackman v. Bd. of Adjustment*, 596 N.W.2d 96, 106 (Iowa 1999). We are bound by its fact-findings if supported by substantial evidence. *See Bontrager*, 748 N.W.2d at 495. Evidence is substantial if "a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Bush v. Bd. of Trs.*, 522 N.W.2d 864, 866 (Iowa Ct. App. 1994).

### IV. Analysis

#### A. Legality of the Board's Decision to Grant the Setback Exception

Graziano challenges the legality of the board's action, contending (1) the board failed to make required written findings and (2) substantial evidence does not support the grant of an exception. *See* Iowa Code § 414.15. The board could not grant a front yard setback exception unless it found applicant Kent proved the grounds for granting an exception. *See Bontrager*, 748 N.W.2d at 485; *see also* Iowa Code § 414.7 (providing that the board "may in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinances"). Under section 134-64(4) of the Des Moines, Iowa, Municipal Code, the board has the general power to permit exceptions to district regulations, so long as the exception meets certain

requirements, including, as relevant here, the exception does "not diminish or impair established property values in surrounding areas." To grant a front yard setback exception, the board must also find:

> 1. (a) Such exception does not exceed [fifty] percent of the particular limitation or number in question . . .
> 2. The exception relates entirely to a use classified by applicable district regulations as either a principal permitted use, a permitted accessory use, or a permitted sign, or to off-street parking or loading areas accessory to such a permitted use;
> 3. The exception is reasonably necessary due to practical difficulties related to the land in question;
> 4. Such practical difficulties cannot be overcome by any feasible alternative means other than an exception; and
> 5. The exception is in harmony with the essential character of the neighborhood of the land in question.

Des Moines, Iowa, Municipal Code § 134-64(4)(a).

When the board renders a decision either granting or denying an exception, it must "make written findings of fact on all issues presented." *Bontrager*, 748 N.W.2d at 488 (citation omitted). Substantial, as opposed to literal, compliance with this requirement suffices. *Id.* Substantial compliance means the rule has been followed closely enough to carry out the intent for which it was adopted. *Id.* (citation omitted). The intent of the written-findings requirement is "to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Citizens Against the Lewis & Clark (Mowery) Landfill v. Pottawattamie Cty. Bd. of Adjustment*, 277 N.W.2d 921, 925 (Iowa 1979).

Graziano challenges the last two requirements of section 134-64(4)(a) (i.e., exception is only feasible means to overcome practical difficulties and is in harmony with the essential character of the neighborhood), as well as the

general mandate that the exception must not diminish property values in the surrounding area. We address each argument in turn.

### 1. Only Feasible Means

Graziano first contends: "There was no finding and no substantial evidence to support a finding that practical difficulties could not be overcome by any feasible alternative means other than an exception, as required by the [o]rdinance." *See* Des Moines, Iowa, Municipal Code § 134-64(4)(a)(4). Specifically, Graziano maintains the board failed to consider "the feasibility of placing a smaller house on the lot." The city responds that "a full study of every alternative" is not required by law and "[i]f staff thought it feasible to shrink the building envelope as an alternative to the [thirty] foot front yard setback, that recommendation would have been made."

> In its written decision, the board found:

> There is a practical difficulty in providing the necessary front yard setback given the shallow depth of property available for single-family development. If the otherwise required [fifty]-foot front setback were met, it would likely necessitate relief of the rear yard setback. In this instance, there is also a good portion of the rear yard that is encumbered by the public storm sewer easement making it a challenge to shift the proposed building footprint further east to increase the front yard setback.

While the board expressly considered the practical difficulties in its findings, it did not discuss the "any feasible alternative means" requirement. Accordingly, we look to the totality of the circumstances to determine whether the board substantially complied with the written-findings requirement as to this element.

At the hearing, the city staff member presented the board with the applicable requirements for granting an exception. The staff member did not

comment on the feasible-alternative requirement. But Mike Kent mentioned the possibility of moving the easement, which he believed would be cost prohibitive. And following the public-comment portion of the meeting, the board members briefly discussed two other potential alternatives. The board chair suggested a smaller ten-foot exception might be warranted, but the city staff member disagreed, reasoning: "[T]he farther back you go, the narrower the house is going to have to be." The board chair countered: "Depending on how you design a house, they are going to have a second level. So . . . you could construct it—yeah, we probably don't want, like, a shotgun-style house like New Orleans or anything, but they might be able to do that." Another board member suggested a redesign to the house with a bedroom suite jutting back from the home.

Given the discussion of alternatives at the hearing, and the inclusion of the ordinance language in the staff member's written report, we find the board substantially complied with the written-findings requirement related to this subsection. *See Bontrager*, 748 N.W.2d at 489 (finding substantial compliance with the written-findings requirement as to property values when board members discussed property-value requirement at hearing, city planner told board it must consider the requirement, and several persons at the hearing spoke about the issue); *see also Thorson,* 90 N.W.2d at 735 ("[T]he requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency be wholly paralyzed.").

We next consider whether substantial evidence supports the board's finding that practical difficulties could not be overcome by any feasible alternative means. The "practical difficulty" here was fitting the desired size home onto the

lot encumbered by the diagonal easement. As Mike Kent explained at the hearing, Cecilia requested a relatively large footprint to accommodate a master suite on the first floor and to enhance the resale value of her home. Discussion between board members immediately preceding the vote indicates their consideration and ultimate rejection of at least two alternatives to Kent's request.

But as Graziano points out, the board lacked one key piece of information: the size of the house that could fit on the lot if her exception and variance requests were all denied.[9] When asked how denying the side yard setback exception would affect the size of the home, the city staff member reported: "You got to have trigonometry to figure that out really," and concluded only: "[I]t will reduce the footprint they're asking for right now." He continued: "They don't have a design to really show that's what we have to have. You know, if we would have had a home design with an absolute footprint or something, I think we might have been able to look into that more."

Although Graziano raises legitimate concerns about the information available to the board, we find substantial evidence in the record to support the board's finding on this requirement. The board was permitted to rely upon Mike Kent's assertions the easement necessitated the proposed placement of the home and moving the easement would be expensive and impractical. *Cf. Green v. Wilderness Ridge, L.L.C.*, 777 N.W.2d 699, 704 (Iowa 2010) (construing

---

[9] On appeal, Graziano compares the size of the home requested by Kent to the size of a neighboring home, which he asserts may be found in the records of the county assessor. He did not present that information to the board and did not ask either the district court or our court to take judicial notice of the fact. We decline to take judicial notice under these circumstances.

"feasible" in context of condemnation proceeding under Iowa Code section 6A.4(2) (2005), and noting: "At the core of the definition of 'feasible' . . . are the notions of reasonableness and practicality."). The board could have reached a more informed decision given a precise analysis of how moving the proposed home back would have impacted its dimensions. But in the absence of such a calculation, the board members could consider the views of the city staff and employ their common sense to determine that denial of the setback would result in a narrower home that would neither fit with the character of the neighborhood nor allow for a master suite on the first floor. *See Bontrager*, 748 N.W.2d at 496; *see also Helmke v. Bd. of Adjustment*, 418 N.W.2d 346, 352 (Iowa 1988) ("[W]hether the evidence in a close case such as this one might well support an opposite finding is of no consequence, for the district court cannot substitute its judgment for that of the board of adjustment.").

### 2. Essential Character of the Neighborhood

Next, Graziano argues: "There was no evidence, discussion, deliberations or finding regarding the relative scale of the proposed house in comparison with other houses on the street." Without such a finding, Graziano maintains the board's finding "the exception is in harmony with the essential character of the neighborhood" cannot be supported by substantial evidence. *See* Des Moines, Iowa, Municipal Code § 134-64(4)(a)(5). The board contends it was allowed to rely upon commonsense inferences and the informed conclusions of city staff.

The board satisfied the written-findings requirement on this issue. In its decision, the board concluded:

44th Street is a curvilinear street pattern between Grand Avenue and Ingersoll Avenue. The homes fronting 44th Street have varying front yard setbacks because the street is not straight north to south. Furthermore, the subject property is also the only parcel fronting the east side of 44th Street that does not extend as deep to the east. Reducing the front yard setback to [thirty] feet would remain in character with the surrounding neighborhood, so long as the home would be built with an architectural design that is compatible with surrounding residential properties.

This reasoning shows the board considered the essential-character requirement and found it was satisfied.

Graziano next contends the board failed to consider the scale of the proposed home relative to the existing homes in the neighborhood.[10] We find substantial evidence to support the board's finding the essential-character requirement was met. The board considered aerial photographs of the neighborhood, as well as the city staff member's opinion that the exception would not be out of character, considering the shape of the street, the large size of the surrounding homes, and the varying front yard setbacks. Neither the applicant nor the city staff was required to conduct a formal study of the relative scale of the homes in the neighborhood. We do not believe Graziano's other concerns warrant relief.

### 3. Property Values

Lastly, Graziano contends the board failed to consider whether the exception would "diminish or impair established property values in surrounding areas" and substantial evidence does not support such a finding. *See* Des

---

[10] In addition, Graziano challenges the quality of the evidence, noting "the [b]oard chose not to require a verified application" or "administer oaths." But Graziano did not raise this objection to the board. Accordingly, he has waived error on the issue. *See Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 877–78 (Iowa 1976).

Moines, Iowa, Municipal Code § 134-64(4). He maintains the only statements supporting the finding were Mike Kent's comments that he "hoped" the development would maintain or raise property values. Because the board did not make a specific finding regarding the effect of the front yard setback exception on property values, we consider whether the board substantially complied with the written-findings requirement. The city again contends it was free to rely upon anecdotal accounts and commonsense inferences in its decision.[11]

As with the other requirements, the board was presented with the relevant ordinance language in the written city staff report. At the hearing, several neighboring owners expressed concern about a decrease in property values, and Mike Kent noted it would be in his "best interest" to "make sure that this house conforms with what's being put there because it's going to affect the property value of my house and everybody else there." In addition, much of the discussion at the hearing concerned maintaining the neighborhood aesthetic, an issue tied to the property-value consideration. Ideally, the board would have been more explicit on this point. But we find sufficient indication the board considered the property-value requirement.

Graziano also argues the record lacked substantial evidence to show the exception would not reduce property values. We disagree. Granted, no expert testified at the hearing that property values would not be impaired by the front

---

[11] At oral argument, the board alternatively asserted the property-value requirement was not independent but, rather, subsumed by the specific elements of section 134-64(4)(a). Because the board neither raised this argument in its briefing nor provided any authority in support of this interpretation, we decline to address it. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *Dilley v. City of Des Moines*, 247 N.W.2d 187, 195 (Iowa 1976) ("[W]e do not consider issues raised for the first time in oral argument.").

yard setback exception, but expert testimony is not required. *See Bontrager*, 748 N.W.2d at 496. Instead, the board may rely upon "commonsense inferences from evidence relating to other issues, such as use and enjoyment, crime, safety welfare, and aesthetics, to make a judgment as to whether the proposed use would substantially diminish or impair property values in the area." *Id.* Before granting Kent's exception, the board focused on neighborhood aesthetics, an issue intertwined with property valuation, and additionally imposed conditions related to the appearance of the home. As the district court determined, the board was permitted to rely upon evidence concerning the character of the neighborhood along with "common sense to determine that a [twenty]-foot exception to the front yard setback requirement would not diminish property values." The only suggestion area property values might decrease came from generalized worries of neighboring property owners. *See Baugh v. Waterloo Bd. of Adjustment*, No. 06-1524, 2008 WL 2746331, at *5 (Iowa Ct. App. July 16, 2008) (rejecting board's conclusion a proposed use of property "would have a negative impact on the surrounding properties" when based "solely on unsubstantiated claims of future harm made by a handful of property owners"). Taken as a whole, the board had sufficient information to decide the exception would not diminish or impair property values in the neighborhood.

## B. Constitutionality of Board Procedures

Graziano argues the procedures employed by the board did not afford him "reasonable notice and opportunity to be heard," violating his right to due process. He contends his notice of hearing on Kent's application was

insufficient[12] and his time to respond at the hearing inadequate.[13]  Although Graziano raised his constitutional claims to the district court, he did not raise them to the board.  He noted in his letter and again before the board that "time ha[d] not permitted [him] to learn" the distance of the other front yard setbacks on the street or the history of the property, but he did not ask for more time.  Nor did he object to the time limitations at the hearing.  "[I]ssues must first be presented to the agency in order to be preserved for appellate review."  *Bontrager*, 748 N.W.2d at 487 (citation omitted).  Because Graziano failed to raise these issues to the board, they are not preserved, and we decline to address them.

## C. District Court's Denial of Graziano's Request for a Stay

Lastly, Graziano argues the district court abused its discretion when it denied his request for a stay of the board's decision during the pendency of the proceedings.  Graziano's claim is moot.  Although the city did not raise the issue in its briefing,[14] we may consider it on our own motion.  *See In re Estate of Troester*, 331 N.W.2d 123, 127 (Iowa 1983).  The only remedy Graziano requests is "guidance regarding the stay provisions" of Iowa Code section 414.16 and Iowa Rule of Civil Procedure 1.1405.

A stay order "maintain[s] the status quo until a determination can be made on the merits" of a controversy.  *Hanna v. State Liquor Control Comm'n*, 179

---

[12] On November 25, 2015, city staff mailed notice of the hearing to the area neighborhood associations and to primary titleholders for each property within 250 feet of the subject property.  Graziano acknowledges receiving the notice on November 28, eighteen days before the hearing.

[13] Under regular board procedures, Mike Kent was allowed ten minutes to present to the board.  Other parties speaking in support of or opposition to the application were allowed five minutes to speak.  Kent then received an additional three minutes for rebuttal.

[14] Upon questioning at oral argument, the city asserted the stay issue was moot.

N.W.2d 374, 376 (Iowa 1970). Because the merits of this controversy have now been decided and the issue of whether the district court abused its discretion in denying Graziano's request for a stay will have no practical effect upon any existing controversy, we decline to consider the issue on appeal.[15]  *See Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 679 (Iowa 1998).

**AFFIRMED.**

---

[15] Graziano urges an exception to the mootness doctrine for the first time in his reply brief. The new argument is not advanced in response to any assertion in the appellee's brief.  We generally decline to consider an issue raised for the first time in a reply brief. *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 366 n.2 (Iowa 2007).  But even if we were to entertain the argument, we are not persuaded the mootness exception applies here.  The public-importance exception focuses on four factors: (1) whether the issue is public or private, (2) the desirability of an authoritative adjudication to guide public officials in their future conduct, (3) the likelihood the issue will recur, and (4) the likelihood the issue will evade appellate review.  *See Homan*, 864 N.W.2d at 330. Because denial of a stay did not preclude consideration of the merits of the board's action, we find no public purpose is served by evaluating the moot issue.  Although Graziano emphasizes the importance of providing guidance on the issue of stays, he did not provide the district court with an alternative framework for analyzing his request for a stay, and on appeal, he provides no support for his new position a stay should be granted whenever "there appears to be a legitimate and meritorious objection to the exception."  *See* Iowa R. App. P. 6.903(2)(g)(3).  Given these circumstances, we decline to address the merits of this issue.